SWEDISH–AMERICAN NATIONAL BANK OF MINNEAPOLIS v. CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY.[1]

December 15, 1905.

Nos. 14,473—(104).

**Bills of Lading—Record Entries.**

Action by an indorsee of certain bills of lading to recover the value of the property therein described, for the reason that the carrier failed to deliver it to the plaintiff. *Held*:

1. Whether record entries relevant to the issue, made in the regular course of business, are properly verified as a basis for receiving them in evidence, is a question for the exercise of practical sense and sound discretion by the trial judge, and his decision of it will not be reversed on appeal, if there is any evidence reasonably supporting it. The entries here in question were properly received in evidence.

2. A carrier, even as to an innocent indorsee, is not estopped by statements in a bill of lading issued by his agents from showing that no goods in fact were received for transportation, unless by his usual mode of doing business he has given to his agents authority to issue bills of lading for goods not received. National Bank of Commerce v. Chicago, B. & N. R. Co., 44 Minn. 224, followed.

3. The evidence herein was not sufficient to sustain a finding that the defendant had authorized its agents to issue bills of lading for goods not received.

Action in the district court for Hennepin county to recover $854 for the conversion of certain bran described in two shipping receipts signed by a clerk of defendant's local agent and delivered to Blew, Armstrong & Co., whose drafts against the same were cashed by plaintiff. The case was tried before Pond, J., and a jury, which rendered a verdict

[1] Reported in 105 N. W. 69.

in favor of defendant. From an order, Elliott, J., denying a motion for a new trial, plaintiff appealed. Affirmed.

*John Lind* and *A. Ueland,* for appellant.

*Young & Lightner,* for respondent.

START, C. J. [2]

The defendant's freight agent at the city of Minneapolis on August 15, 1902, signed and delivered two bills of lading to the firm of Blew, Armstrong & Co., hereafter referred to as the firm, each of which acknowledged the receipt of three hundred fifty sacks of bran to be transported to Marion, Ohio, there to be delivered to the consignee. On the same day the firm drew two drafts for $280 each on the consignee, attached them to the bills of lading, and indorsed them to the plaintiff. In consideration thereof and relying thereon the plaintiff advanced to the firm the full amount of the drafts. The bran never reached its destination, the drafts have never been paid, the firm are insolvent, and this action was brought to recover the value of the bran. The defense was that the defendant never received the bran, and, further, that its agent had no authority to sign and deliver the bills of lading without a delivery of the bran. The trial court instructed the jury to the effect that if the bran was delivered to the defendant it was liable for the value thereof, but if it was not delivered to the defendant it was not liable. The jury returned a verdict for the defendant, and the plaintiff appealed from an order denying its motion for a new trial.

1. The defendant, as part of its evidence to show that the two cars of bran were never received by it, introduced in evidence over the objection of the plaintiff the car record of another carrier at Minneapolis which tended to show that the cars of bran were delivered to such other carrier and shipped out of Minneapolis over its line. This is urged as error, for the alleged reason that the record was not verified, either as required by the common law or by the statute in relation to books of account. It was, however, shown that the record was made in the regular course of the business of such carrier, entries were made therein of every car coming into its possession and its movements within the city limits, and, further, that the entries were made under circum-

2 ELLIOTT, J., took no part.

stances precluding any motive for misrepresentation and under conditions calculated to insure accuracy. Whether such entries in any particular case are properly verified as a basis for receiving them in evidence is a question calling for the exercise of practical sense and sound discretion by the trial judge, and his decision of it will not be reversed on appeal, if there is any evidence fairly sustaining his conclusion. Any other rule, in view of the magnitude, methods, and necessities of modern business enterprises, would result in great inconvenience and injustice. "In short, courts must here cease to be pedantic and endeavor to be practical." 2 Wigmore, Ev. 1530; 1 Greenleaf, Ev. § 115. The record here in question was properly received in evidence.

2. The trial court submitted only one question to the jury, which was whether the bran was ever delivered to the defendant, and directed them to return a verdict for the plaintiff if it was delivered, and for the defendant if it was not. In thus narrowing the issue the court must have ruled, as a matter of law, either that the evidence was practically conclusive that the defendant's agents had no authority, real or apparent, to issue bills of lading unless the property therein described had been delivered to the defendant, or that, whether the bills of lading were or were not issued by the authority of the defendant, it was not estopped from showing that the goods therein described were never delivered to it. It follows that, if either proposition was right, the court correctly instructed the jury, but otherwise if both propositions were wrong. It is the contention of the plaintiff that the evidence was sufficient to sustain a finding that the defendant authorized its agents to issue bills of lading without any delivery to it of the property therein described, and that if it did so it would be liable to third parties relying in good faith upon such bills. It was held in the case of National Bank of Commerce v. Chicago, B. & N. R. Co., 44 Minn. 224, 236, 46 N. W. 342, 560, in accordance with the weight of judicial opinion, that a bill of lading issued by the shipping agent of a carrier without receiving the goods named in it does not estop the carrier from showing that no goods were in fact received for transportation as against an innocent consignee or indorsee for value. In the case cited the court, after stating the basis upon which the decision rests, stated incidentally that "no doubt a carrier might adopt a different mode of doing business by giving his agents authority to issue bills of lading for goods

not received, so as to render him liable in such cases to third parties."

The plaintiff claims that the evidence brings this case within this apparent exception to the general rule, that the carrier is not estopped to show that he did not receive the goods described in the bill of lading. The exception, if given the broad application claimed for it by the plaintiff, would be inconsistent with the reasons upon which the rule is based, which are that liability of a carrier does not begin until the goods are delivered; that while bills of lading are symbols of the property therein described, and their transfer operates as a transfer of the property, yet they are not negotiable as bills of exchange and promissory notes are; hence the carrier may show, as against a bona fide holder of a bill of lading, that he did not receive the goods named therein. Missouri Pac. Ry. Co. v. McFadden, 154 U. S. 155, 14 Sup. Ct. 990. The argument that the carrier should be estopped, as against a party who parted with his money upon the statement in the bill of lading made by the carrier or his agents that he had received the goods, is a strong one; but it was fully considered by this court in the case cited. The exception, then, to which we have referred, must be construed with reference to the rule adopted and the reason upon which it is based. So construed, the exception is limited to cases where the carrier by his usual mode of doing business gives to his agents authority to issue bills of lading for goods not received.

This brings us to the question whether the evidence, taking the most favorable view of it for the plaintiff, would sustain a finding by the jury that the defendant did so authorize its agents at Minneapolis to issue bills of lading for goods not received. The evidence tends to show that the defendant adopted printed rules for the conduct of its business, one of which was this,

> Receipts, bills of lading, and live stock contracts must not be issued until entire shipment is in possession of the company, and the date shown thereon should be the date on which the shipment is completed;

that its general agent at Minneapolis never received any authority in any way from his superiors to depart from this rule; that it was customary for the agents in charge of the Minneapolis office, where the bills of lading in question were issued, to sign bills of lading presented

by shippers whom they knew to be reputable without going out to ascertain whether the property therein described was on the track or in the cars; that at the time the bills of lading were delivered to the firm they were large and reputable shippers over the defendant's road, and the bills were signed by the agent for the reason that he assumed, because the shippers were reputable business men, that the goods had been delivered; and, further, that the agent never signed any bills of lading when he knew that the goods had not been delivered. We are of the opinion, and so hold, that the evidence was not sufficient to sustain a finding to the effect that the defendant by its mode of business gave to its agents authority to issue bills of lading for goods not received.

3. After the case had been submitted to the jury they returned into court for further instructions, and the plaintiff's counsel requested the court to give them the instructions following, namely:

> In this connection I would ask your honor to state to the jury whether, if the Great Western should have carried the goods out—these same goods out of town—and the goods were actually in cars at the time when the receipts were given by the defendant company and before the Great Western had appropriated the goods and taken them out, whether it would not be a receipt of the goods by the defendant company.

The court replied:

> Oh, I think the instructions cover all the court ought to say on that subject. The plaintiff will be entitled to recover if defendant got these goods, got possession of these goods, as these shipping receipts purport to state. If they never received the goods, they are not liable.

The refusal to give the request is assigned as error. It was not; for the facts assumed in the request would not, standing alone, show a receipt of the goods by the company.

Order affirmed.