NATIONAL TEA COMPANY, INC., Appellant,

v.

TYLER REFRIGERATION COMPANY, INC., Respondent.

No. CX–82–1189.

Supreme Court of Minnesota.

Oct. 21, 1983.

W.D. Flaskamp and Douglas J. Muirhead, Minneapolis, for appellant.

Robert D. Brownson, Minneapolis, for respondent.

TODD, Justice.

A fire occurred in a Tyler meat refrigeration unit installed in the National Tea Co. store in Hutchinson, Minnesota. The store's expert witness opined that the fire was the result of faulty design in passing electrical wires through an unprotected square hole in the sheet metal. Tyler's expert claimed the fire was caused by failure of a heating wire which had been improperly circuited at the time of installation. The trial court over objection admitted a document kept by Tyler showing the design of the unit had been approved for Underwriters' Laboratories (UL) listing. The jury found no negligence and that the refrigeration unit was not in a defective condition when it left the control of Tyler. We affirm.

This case involves a factual determination by the jury which we will allow to stand. The only issue of importance is the admission into evidence of the report contained in Tyler's business records which indicates Underwriters' Laboratories had approved the design.

Underwriters' Laboratories is an independent, not for profit, organization, which many years ago was formed by the insurance industry in an effort to establish a certification program whereby the quality of products could be determined, ascertained, tested, evaluated, accepted and listed by Underwriters' Laboratories to have passed their requirements. The model of refrigeration units here involved was originally listed by Underwriters' Laboratories in 1966. The fire occurred May 23, 1979. A listing of Underwriters' Laboratories is somewhat equivalent to certification or approval by other organizations such as the Good Housekeeping seal of approval. Any Underwriters' Laboratories listing is reviewed at least once a year.

Arthur Perez, the expert witness for Tyler, testified in detail as to the procedures followed by Tyler in obtaining and maintaining their Underwriters' Laboratories listing on this particular model of refrigeration unit. Perez is an electrical engineer who worked for 33 years with Tyler Refrigeration Company, Inc. He held various titles with Tyler including refrigeration engineer, administrative engineer, chief engineer, director of engineering and vice president of engineering. In the latter capacity, people designing products for Tyler reported to Perez. Perez now privately consults for business in Europe and the United States. Perez was well acquainted, in his years as an engineer, with the operations and procedures employed by UL in approving a product. The trial court found that Perez was qualified to lay the foundation for the UL report. The Underwriters' Laboratories listing document furnished to Tyler was offered and received in evidence over objection by National Tea.

■ We have never directly considered the standards to be applied by trial courts in receiving reports such as the Underwriters' Laboratories listings. If admissible,

they would be received as an exception to the hearsay rule. Minn.R.Evid. 803(6) provides:

(6) Records of regularly conducted business activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian *or other qualified witness,* unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Minn.R.Evid. 803(6) (emphasis added). The rule has three requirements for evidence to qualify for this exception. First, that the evidence was kept in the course of a regularly conducted business activity. Second, that it was the regular practice of that business activity to make the memorandum, report, record, or data compilation. Finally, that the foundation for this evidence is shown by the custodian or other qualified witness.

National Tea contends that the business record exception applies only to the business that made the record. Since Tyler did not make the UL report and Perez, who laid the foundation for the UL report, did not work at UL, National Tea concludes that requirements one, two and three above are not met. At least one commentator and several courts disagree with National Tea's interpretation.

Records of regularly conducted activity are not normally self proving as public records may be. See Rule 803(8), *infra.* The testimony of the custodian or other qualified witness who can explain the recordkeeping of his organization is ordi-

narily essential. The phrase "other qualified witness" should be given the broadest interpretation; *he need not be an employee of the entity so long as he understands the system.* Thus, a certified public accountant could testify on the point after examining the books and records. A foundation for admissibility may at times be predicated on judicial notice of the nature of the business and the nature of the records as observed by the court, particularly in case of bank and similar statements, or the parties may stipulate the records were filed and prepared in the regular course of business.

When testimony by a custodian is required, the entry must be excluded if the witness cannot vouch that the requirements of Rule 803(6) have been met. The custodian need not have "personal knowledge of the actual creation of the document." Nor need the custodian have been in the employ of the business at the time of the making of the record.

4 J. Weinstein & M. Burger, Weinstein's Evidence ¶ 803(6)[02] (1981 & Supp.1982) (emphasis added and citations omitted); *see United States v. Consolidated Edison Co. of N.Y.,* 580 F.2d 1122, 1131 n. 18 (2d Cir.1978); *United States v. Hines,* 564 F.2d 925, 928 (10th Cir.1977), *cert. denied,* 434 U.S. 1022, 98 S.Ct. 748, 54 L.Ed.2d 770 (1978).

At least one court has held that the custodian need not be in the employ of the business at the time of the making of the record. *See United States v. Evans,* 572 F.2d 455, 490 (5th Cir.1978), *cert. denied,* 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978). The Eighth Circuit Court of Appeals has held that it is not necessary under the new rules that the declarant be present if the knowledge of the custodian of the record demonstrates that a document has been prepared and kept in the course of a regularly conducted business activity. *United States v. Pfeiffer,* 539 F.2d 668, 671 (8th Cir.1976); *United States v. Page,* 544 F.2d 982, 987 (8th Cir.1976).

This court has also held that one business entity may submit the records of another business entity to establish a proposition at

trial. *See Swedish-American National Bank v. Chicago, B. & Q. Ry. Co.,* 96 Minn. 436, 105 N.W. 69 (1905). *Swedish-American National Bank* involved an action by an indorsee of certain bills of lading to recover the value of property described in the bills of lading which the carrier failed to deliver. *Id.* at 437–38, 105 N.W. at 69. The defendant submitted, as part of its evidence to prove that the cars of bran shipped by plaintiff were never received by it, the car record of another carrier. These records showed that the other carrier and not defendant had received the two cars of bran. *Id.* at 437, 105 N.W. at 69.

The court held that the records were made in the regular course of business of the other carrier and were reliable. The court found no motive for misrepresentation of these records. Finally, it held that such decisions on foundation are properly within the practical sense and sound discretion of the trial judge. *Id.* at 437–38, 105 N.W. at 69–70.

 We hold that it is not necessary that the person preparing reports such as the UL listings testify as to their contents. Rule 803(6) allows not only the custodian of a business record to establish the foundation for its admissibility, but also any "other qualified witness." The trial court properly exercised its discretion both in allowing Perez to lay the foundational requirements and in receiving the UL report. In exercising its discretion a trial court should be guided by the following principles:

1. Was the opinion prepared for presentation in the case being tried? If so, then the expert should testify. That was not the situation in this case.

2. Was the report made by an independent agency or a hired agency? Here there was an independent agency, which lends more credibility to the report.

3. When was the report made? Was it an existing report, as in this case, or was it prepared in contemplation of the litigation?

4. The nature of the organization preparing the report. Is it an organization, such as in this case, established to do exactly the kind of work involved in preparing the report? Application of this last principle generally precludes the admission of a magazine or newspaper article as a business record merely because it happens to be part of the records of the company offering such evidence.[1]

Applying these principles to this case we hold that the trial court properly received into evidence the Underwriters' Laboratories report on the listing of the Tyler Refrigeration equipment involved in this fire. *See McKinnon v. Skil Corp.,* 638 F.2d 270, 277 (1st Cir.1981).

Affirmed.

COYNE, J., took no part in the consideration or decision of this case.

---

1. For an exception to this rule, *see Dallas County v. Commercial Union,* 286 F.2d 388 (5th Cir.1961). *Dallas County* involved whether a courthouse tower had collapsed of its own weight or because it had been struck by lightning. If it had been struck by lightning insurance would have covered the damage. Plaintiffs, in proof of their lightning theory, submitted evidence of charred timbers in the wreckage. Defendants countered, introducing evidence of a 1901 newspaper article describing a fire in the tower while the courthouse was still under construction. The Fifth Circuit Court of Appeals upheld the admissibility of the article under Rule 803(24), noting that the newspaper article had equivalent circumstantial guarantees of trustworthiness. The court stated "if they are worth their salt, evidentiary rules are to aid the search for truth." *Id.* at 395.