TC/AMERICAN MONORAIL,
INC., Respondent,

v.

CUSTOM CONVEYOR
CORPORATION,
Appellant.

No. A11–2119.

Court of Appeals of Minnesota.

Oct. 22, 2012.

Michael Kenneth Hoverson, Hoverson Law Office, P.A., Minneapolis, MN; and Paul Frederick Shoemaker, Shoemaker & Shoemaker, PLLC, Bloomington, MN, for respondent.

Mark Valdemar Steffenson, Henningson & Snoxell, Ltd., Maple Grove, MN, for appellant.

Considered and decided by KALITOWSKI, Presiding Judge; HUDSON, Judge; and COLLINS, Judge.

## OPINION

COLLINS, Judge.*

In this appeal from judgment following a jury trial, appellant challenges the district court's denial of its motion for judgment as a matter of law (JMOL) or a new trial, arguing that the district court erred by (1) denying JMOL on appellant's contract claim, (2) denying appellant's request for commissions or letters rogatory to conduct trial depositions, and (3) excluding certain evidence during trial. We affirm.

## FACTS

In 2009, appellant Custom Conveyor Corporation contracted to provide equipment for a wastewater treatment plant in the City of North Las Vegas, Nevada (the city or CNLV). Custom Conveyor manufactured some of the equipment for the project itself, but it sought bids for production of four steel hoppers and support stands.

Custom Conveyor selected a $305,000 bid, or RFQ, from respondent TC/American Monorail, Inc. for the four hoppers with stands. In preparing the bid, TC/American project manager Loren Loso communicated to Custom Conveyor that TC/American is a "D1.1 shop," meaning

that TC/American's welders are certified to the D1.1 standard set forth by the American Welding Society (AWS). Generally, under the D1.1 standard, welds must pass a visual inspection, but not electronic testing. Drawings issued by Custom Conveyor in connection with the project also provided for welding to the D1.1 standard. The parties also agreed to a standard for surface preparation before painting.

When the initial shipment of TC/American's product arrived at the project site in North Las Vegas, the city expressed dissatisfaction with the quality of the welds. Custom Conveyor notified TC/American, and TC/American agreed to send its quality control manager, John Eickhoff, to the project site. Eickhoff is recognized by AWS as a certified welding inspector (CWI). TC/American ultimately agreed to have the initial shipment returned to it for repairs. The parties disputed at trial which party was to be responsible for the return shipping costs.

Eickhoff and Loso agreed that some of the disputed welds did not meet D1.1 standards, but disagreed about other welds. According to Loso, "[i]t was obvious at that time they were asking for something more than the D1.1 visual requirements that we had discussed at RFQ and through the project." He advised TC/American senior engineering manager Thomas Eull that Custom Conveyor had quoted the project based on the D1.1 standard; that "[t]he customer obviously has different criteria"; that Custom Conveyor would need to "charge for the hours it takes to satisfy them"; and that, "if we do not get these issues resolved in a quick manner, I cannot guarantee any delivery dates."

Following the return of the first shipment, the construction manager at risk

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by

appointment pursuant to Minn. Const. art. VI, § 10.

(CMAR)[1] for the project hired its own inspector, Steve Bengtson, to inspect the products before they left TC/American's facility. Like Eickhoff, Bengtson is a CWI. At trial, the parties disputed Bengtson's role. TC/American understood that Bengtson was there to approve the products on Custom Conveyor's behalf. Custom Conveyor asserted that Bengtson's role was simply to report back to the CMAR, and that he was not even able to fully view the products. Bengtson visited the facility at least five times and reported a variety of issues regarding TC/American's welds, surface preparation, and painting. He reinspected most of the problem areas to confirm that they had been corrected before the product left TC/American's facility. Bengtson conceded that D1.1 is a somewhat subjective standard, and that one CWI could disagree with another over whether the standard was met.

Custom Conveyor reshipped the initial shipment of TC/American product and made several additional shipments through December 2009. The city had additional objections to the product. Custom Conveyor solicited additional involvement from TC/American, but TC/American refused, taking the position that it had met the requirements of its contract with Custom Conveyor and was not responsible for satisfying the city's higher standards. Custom Conveyor ultimately elected not to use any of the stands manufactured by TC/American. Custom Conveyor used TC/American's hoppers after sending them to a Nevada facility for further surface preparation and painting.

After Custom Conveyor failed to pay TC/American's invoices for the CNLV project, TC/American brought suit seeking payment of those invoices, as well as unpaid invoices for two other projects on which Custom Conveyor had contracted with TC/American. At trial, credit-and-collections specialist Renee Villelia authenticated invoices reflecting, and testified to, the following balances owed: CNLV project, $172,561; WPM project, $52,402; and MHC project, $5,440. After calculating interest of $54,176.54, Villelia's total for all unpaid invoices with interest was $284,579.54.

Custom Conveyor counterclaimed for breach of contract. At trial, Eull and Custom Conveyor president David Casperson testified regarding damages, including $5,500 in shipping costs in connection with returning the first shipment to TC/American for repairs; $38,000 in costs to test the TC/American product in response to complaints from the city; $26,000 to one entity and $97,000 to another to have TC/American's support stands removed and stored until they were scrapped; $121,000 to have the support stands refabricated and $22,000 to have them shipped to Nevada; $31,000 to have the hoppers transported; and $76,000 to have the hoppers reblasted and repainted. In light of such damages, Casperson testified that he determined to withhold remaining amounts owed TC/American on the CNLV, WPM, and MHC projects.

The parties' claims were tried to a jury, and the jury was instructed on both breach-of-contract and goods-sold-and-delivered theories. The jury returned a special verdict finding that both Custom Conveyor and TC/American had breached the CNLV contract. The jury found that TC/American had suffered damages totaling $172,561, but that Custom Conveyor was entitled to an offset of $43,000. The jury also found that Custom Conveyor had breached the contracts for the MHC and WPM projects, and that TC/American was

---

1.  A CMAR is analogous to a general contractor.

entitled to damages of $8,440 and $67,552, respectively, on those projects. These damages, less the offset, total $205,553. The jury separately found that TC/American was entitled to $205,553 in damages on its claim for goods sold and delivered.

Custom Conveyor moved for judgment as a matter of law (JMOL) or a new trial. The district court denied the motion in both respects, and this appeal followed.

## ISSUES

I. Did the district court err by denying JMOL on the contract claim?

II. Did the district court abuse its discretion by denying Custom Conveyor's request for commissions or letters rogatory to conduct trial depositions?

III. Did the district court abuse its discretion by excluding certain evidence during trial?

## ANALYSIS

■ On appeal from a motion for JMOL, "this court determines whether there is any competent evidence reasonably tending to sustain the verdict." *Bolander v. Bolander*, 703 N.W.2d 529, 545 (Minn.App.2005) (citing *Blue Water Corp., Inc. v. O'Toole*, 336 N.W.2d 279, 281 (Minn. 1983)). *See* Minn. R. Civ. P. 50.01. "The jury's verdict stands unless it is manifestly and palpably contrary to the evidence, considered in the light most favorable to the plaintiff." *Id.* (citing *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 256 (Minn. 1980)). "Verdicts are upset only in extreme circumstances." *Id.* (citing *Ralph Hegman Co. v. Transamerica Ins. Co.*, 293 Minn. 323, 327, 198 N.W.2d 555, 558 (1972)). We review the district court's denial of a motion for a new trial for abuse of discretion. *See Lake Superior Ctr. Auth. v. Hammel, Green & Abrahamson,*

*Inc.*, 715 N.W.2d 458, 476–77 (Minn.App. 2006).

### I.

Custom Conveyor first challenges the district court's denial of JMOL, arguing that it was entitled to judgment as a matter of law because the jury found that TC/American breached the CNLV contract and TC/American necessarily committed the "first breach," thereby excusing Custom Conveyor from performing. We disagree for several reasons.

■ First and foremost, Custom Conveyor did not present this theory at trial or propose that the jury be instructed on it. "As a general rule, litigants are bound on appeal by the theory or theories, however erroneous or improvident, upon which the case was actually tried." *Johnson v. Jensen*, 446 N.W.2d 664, 665 (Minn.1989) (rejecting argument raised for first time in a motion for a new trial). Accordingly, we disregard Custom Conveyor's effort to introduce a new theory into the case posttrial.

■ Second, as argued by TC/American, Custom Conveyor's cause of action is governed exclusively by Article 2 of the Uniform Commercial Code (U.C.C.). *See* Minn.Stat. §§ 336.2–102 (2010) (providing that Article 2 "applies to transactions in goods"); 336.2–105(1) (2010) (defining goods to include "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (article 8) and things in action"); *see generally* Lary Lawrence, *Lawrence's Anderson on the Uniform Commercial Code* § 1–103:30 (3d ed. 2012) ("When the only contract involved is one arising under the [U.C.C.], general principles of contract

law are not applicable.").[2] Under the U.C.C., a buyer who does not reject goods is presumed to accept them and is liable for the contract price, Minn.Stat. §§ 336.2–606(1)(b), –607(1) (2010), although the buyer may "recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable." Minn.Stat. § 336.2–714 (2010). Given these specific provisions of the U.C.C., "the common law doctrine that one contracting party is automatically excused from his contractual performance by the prior breach of the other party is wholly inapplicable to a contract for the sale of goods governed by the U.C.C." *Glenn Thurman, Inc. v. Moore Constr., Inc.*, 942 S.W.2d 768, 772 (Tex.Ct.App.1997) (reversing jury verdict because jury was improperly instructed that party may be excused from performance of U.C.C. contract by other party's prior breach).

▮▮▮▮ Third, even assuming the first-breach rule to be applicable to sales contracts, the better expression of that rule is that a breach must be material in order to excuse performance. *See, e.g., BOB Acres, LLC v. Schumacher Farms, LLC*, 797 N.W.2d 723, 727–29 (Minn.App.2011) (rejecting argument that appellant was excused from performing under contract because alleged breach was not material), *review granted* (Minn. June 14, 2011), *appeal dismissed* (Minn. Aug. 12, 2012); *see generally* Richard A. Lord, 14 *Williston on Contracts* § 43:5 (4th ed. 1990) (explaining that modern courts and Second Restatement generally recognize one party's breach does not excuse other's performance unless breach is material or substantial, but may support recovery of dam-

ages). Thus, assuming that TC/American was the first to breach, that fact alone would be insufficient to excuse Custom Conveyor from performing. For these reasons, we conclude that the district court did not err by denying JMOL on this ground.

## II.

▮▮▮▮ Custom Conveyor next challenges the district court's denial of its motion for commissions or letters rogatory to depose out-of-state witnesses who were unavailable for trial. The district court denied the request because it was made after the deadline for discovery in the court's scheduling order. District courts have "considerable discretion in granting or denying discovery requests." *Erickson v. MacArthur*, 414 N.W.2d 406, 407 (Minn. 1987). "Absent a clear abuse of discretion, a [district] court's decision regarding discovery will not be disturbed." *Id.* Similarly, "[t]he district court has broad discretion to amend scheduling-order deadlines, and we review its decision for an abuse of discretion." *Mercer v. Andersen*, 715 N.W.2d 114, 123 (Minn.App.2006).

▮▮▮▮ Custom Conveyor asserts that the district court erred by applying the deadline for discovery depositions to its request to conduct trial depositions, arguing that there is a distinction between the two. Although neither the Minnesota Supreme Court nor this court has addressed the precise issue raised here, we have rejected any distinction between discovery depositions and trial depositions in the context of evidentiary rulings. *See Larson v. Anderson, Taunton & Walsh, Inc.*, 379 N.W.2d 615, 618–19 (Minn.App.1985) (rejecting appellant's argument that district

---

**2.** Because the U.C.C. exclusively governs, the district court erred by submitting the case to the jury under two theories. But because the jury's verdict was consistent on both counts, that error was harmless.

court erred by admitting deposition taken during discovery when witness subsequently became unavailable), *review denied* (Minn. Mar. 14, 1986). The same reasoning applies here, and we conclude that the district court did not abuse its discretion by applying the discovery deadline to Custom Conveyor's request to conduct trial depositions.

Custom Conveyor urges us to rely on federal caselaw distinguishing between discovery and trial depositions. *See Charles v. Wade,* 665 F.2d 661, 664 (5th Cir.1982) (holding that a federal district court abused its discretion by denying, on the basis that discovery was closed, a party's request to depose an incarcerated witness for the purpose of preserving that witnesses's testimony for trial); *Estenfelder v. The Gates Corp.,* 199 F.R.D. 351, 354 (D.Colo.2001) (allowing trial depositions); *Spangler v. Sears, Roebuck & Co.,* 138 F.R.D. 122, 126 (S.D.Ind.1991) (same). *But see Henkel v. XIM Prods.,* 133 F.R.D. 556, 559 (D.Minn.1991) (granting protective order to preclude trial deposition after close of discovery, reasoning that rules recognize no distinction between discovery and trial depositions). But only one case cited by Custom Conveyor involved an appellate-court holding that a district court abused its discretion by enforcing a discovery deadline to preclude trial depositions, and we are not persuaded to follow it.

In *Charles,* the Fifth Circuit held that a federal district court abused its discretion by denying, on the basis that discovery was closed, a party's request to depose an incarcerated witness to preserve that witness's testimony for trial. 665 F.2d at 664. But a subsequent decision from the Eleventh Circuit—which split off from the Fifth Circuit in 1981 and treats as binding certain Fifth Circuit precedent, including *Charles*—declined to extend *Charles* beyond its particular facts. *Chrysler Int'l Corp. v. Chemaly,* 280 F.3d 1358, 1360 n. 4, 1361 (11th Cir.2002) (explaining that *Charles* is precedential but distinguishable because the witness in *Charles* was incarcerated and there was no indication in that case of delay in seeking the deposition). *Chrysler* and other recent decisions emphasize the district court's discretion in this regard. *See id.* at 1360 ("At the heart of this case is the authority of the district court to control the pace of litigation before it. At the outset, we stress the broad discretion district courts have in managing their cases."); *Spangler,* 138 F.R.D. at 123 (noting discretion with respect to discovery matters and reasoning that courts in that federal district have routinely allowed trial depositions); *Estenfelder,* 199 F.R.D. at 356 (explaining that "in matters which pertain to discovery ... total inflexibility is undesirable" (quotation omitted)). Thus, even the decisions that rely on *Charles* are not necessarily in conflict with cases precluding post-discovery trial depositions, except under compelling circumstances. *See, e.g., Henkel,* 133 F.R.D. at 558. As one court explained, "[t]he alleged tension between discovery and trial depositions is nothing more, or should be nothing more than an ordinary discovery problem." *Estenfelder,* 199 F.R.D. at 356 (applying test on whether to exclude belatedly disclosed evidence to determine whether to allow preservation deposition).

Minnesota's practice rules permit changes to a scheduling order upon a showing of good cause. Minn. R. Gen. Pract. 111.04. Custom Conveyor presented no evidence that would support a finding of compelling circumstances in this case, arguing only that it did not become aware until shortly before trial that its intended out-of-state witnesses would not voluntarily come to Minnesota to testify. Custom Conveyer's pretrial request to depose out-of-state witnesses is thus distinguishable from its later request to take a

deposition for the purpose of preserving the testimony of Kenneth Eickelberg, a witness who was scheduled to testify at trial but became unavailable after a continuance unexpectedly altered the trial dates.

Because neither Minnesota's rules nor its caselaw recognizes a distinction between discovery and trial depositions, because federal caselaw recognizing such a distinction is distinguishable and lacking persuasive value, and because Custom Conveyor did not show good cause for amending the scheduling order, we conclude that the district court did not abuse its discretion by denying Custom Conveyor's requests for trial depositions. *See Integra Lifesciences I, Ltd. v. Merck KGaA*, 190 F.R.D. 556, 559 (S.D.Cal.1999) (denying request for trial depositions because defendants failed to show good cause, explaining that "[w]here a party makes a tactical decision during discovery to refrain from deposing a non-party witness who is beyond the subpoena power of the court . . . that party takes the risk that the testimony will not be presented at trial if the witness does not voluntarily appear").

### III.

Custom Conveyor asserts errors by the district court in evidentiary rulings, which we review for abuse of discretion. *Kroning v. State Farm Auto. Ins. Co.*, 567 N.W.2d 42, 45–46 (Minn.1997).

#### A. Exclusion of Exhibits 258 and 259

█ Custom Conveyor challenges the district court's ruling that these two proffered exhibits were hearsay and that Custom Conveyor did not lay foundation sufficient to meet the business-records exception under Minn. R. Evid. 803(6). In order to be admissible as a business record, a document must be "kept in the course of regularly conducted business activity," and it must be the "regular practice of that business activity to make the [document], all as shown by the testimony of the custodian or other qualified witness." *Id.*

Exhibits 258 and 259 were reports that were prepared by a third party hired by the CMAR to inspect TC/American's welds. Custom Conveyor challenges the district court's ruling that foundation was lacking because Custom Conveyor did not offer testimony from an employee of the business that prepared the reports.

Our supreme court has recognized that, under some circumstances, the necessary foundation for a business record can be provided by someone other than an employee of the entity that created the document. *See Nat'l Tea Co. v. Tyler Refrig. Co., Inc.*, 339 N.W.2d 59, 62 (Minn.1983). The court explained that "[r]ule 803(6) allows not only the custodian of a business record to establish foundation for its admissibility, but also any 'other qualified witness.'" *Id.* at 62. The court observed that, in exercising discretion to determine whether to admit a business record on the testimony of a non-custodial witness, district courts should consider (1) whether the report was prepared for the presentation in the case being tried, in which case the author of the report should testify; (2) whether the report was prepared by a hired or independent agency, the latter lending more credibility; and (3) whether the report was existing or prepared in contemplation of litigation. *Id.* Applying these factors in *National Tea*, the court concluded that the district court did not abuse its discretion by admitting a document prepared by the Underwriters Laboratories (UL) because UL was an independent agency that did not prepare the document for the purposes of the litigation and respondent's employee was familiar with how UL prepared the document.

*Id.; see also Kohn v. La Manufacture Francaise Des Pneumatiques Michelin,* 476 N.W.2d 184, 188 (Minn.App.1991) (holding that admission of document prepared by an independent third party based on testimony from individual who was familiar with procedures used to create that document "was within the district court's discretion").

Here, the district court weighed the *National Tea* factors and determined not to admit the third-party reports. The court reasoned that *National Tea* is distinguishable because UL is a "truly independent testing agency," whereas in this case the third party was a hired agency. We agree. Moreover, as TC/American notes, although there was no pending litigation when the reports were prepared, there was clearly a dispute among the parties regarding the quality of TC/American's products. Accordingly, we conclude that the district court did not abuse its discretion by excluding the third-party reports.

### B. Exclusions and alterations to video-taped deposition testimony

Custom Conveyor also challenges the district court's rulings with respect to the deposition of Kenneth Eickelberg. Under the Minnesota Rules of Civil Procedure, deposition testimony may be introduced at trial under certain circumstances, including when a witness is out of state at the time of trial. Minn. R. Civ. P. 32.01(c)(2). Generally, objections may be made at trial "to receiving any deposition or part thereof for any reason which would require the exclusion of evidence if the witness were then present and testifying." Minn. R. Civ. P. 32.02. "Objections to the competency of a witness or to the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if presented at the time." Minn. R. Civ. P. 32.04(c)(1); *see also C. Kowalski, Inc. v. Davis,* 472 N.W.2d 872, 876 (Minn. App.1991) (rejecting argument that hearsay objection was waived when not made during deposition), *review denied* (Minn. Sept. 13, 1991). "Video depositions may be used in court proceedings to the same extent as stenographically recorded depositions." Minn. R. Civ. P. 32.05.

Custom Conveyer had intended to call Eickelberg as a live witness, but recorded his deposition after an emergency required a continuance of the trial to dates when Eickelberg would no longer be in Minnesota. TC/American objected to the entirety of Eickelberg's testimony as irrelevant and prejudicial, arguing that Eickelberg (a) was without knowledge of the requirements of Custom Conveyor's contract with TC/American, (b) instead testified that TC/American's welds did not meet the requirements of Custom Conveyer's contract with the city, and (c) testified about electronic testing, which was not required under the D1.1 standard. The district court first attempted to address the objections generally, but ultimately scrutinized the deposition with the parties line by line. On appeal, Custom Conveyor argues that the district court improperly excluded certain testimony on grounds of foundation and relevance, altered the remaining deposition testimony based on the exclusions, and declined to admit all testimony elicited by TC/American's counsel on cross-examination.

Custom Conveyor broadly challenges the court's exclusion of evidence that it asserts was based on Eickelberg's personal observations and thus admissible. But it specifically identifies only portions of the transcript in which Eickelberg testified about exhibits 258 and 259. Custom Conveyor does not explain how Eickelberg's

testimony regarding the exhibits could be admissible if the exhibits themselves were not. Because we conclude that the exhibits were properly excluded, we conclude that the district court properly excluded testimony about the exhibits as well.

██ Custom Conveyor separately objects to what it characterizes as the district court's alteration of the deposition testimony to omit the excluded testimony. In order to preserve admissible testimony, the district court in some instances directed the deletion of portions of some answers and in other instances directed deletions resulting in a question being linked to an answer to a subsequent question. Custom Conveyer did not object to this method of redaction at the time, and in fact explicitly accepted some of the court's proposed alterations. Thus, this argument is waived. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (holding that appellate courts will not consider matters not argued to and considered by the district court).

██ Custom Conveyor objects to the district court's denial of its request to admit all of the testimony elicited by TC/American's counsel on cross-examination, arguing that it was entitled to have the cross-examination admitted under Minn. R. Civ. P. 32.01(d), which provides in relevant part:

> If only part of a deposition is offered in evidence by a party, an adverse party may require the offering party to introduce any other part which ought in fairness to be considered with the part introduced and any party may introduce other parts.

Custom Conveyer's reliance on this rule is misplaced. The Eickelberg deposition was offered by Custom Conveyer, and thus it was TC/American, as the adverse party referenced in the rule, that had the right to introduce other parts of the deposition. Custom Conveyer also argues that TC/American, having elicited certain testimony for trial purposes, could not assert new objections that it should have raised when it elicited the testimony originally. This argument ignores the fact that TC/American objected to admission of the entire deposition and, having successfully moved the court to exclude certain portions of Eickelberg's testimony, asserted that much of the cross-examination was irrelevant, as well. Moreover, we agree with TC/American that it was not precluded from objecting to portions of Eickelberg's testimony that its counsel had elicited, because

> when a party uses a deposition taken, but not used, by his opponent, he makes it his own, and his opponent has the same right of objection to the interrogatories and answers, as respects matters of substance, as if the deposition had been taken by the party offering it in evidence; and he is not precluded from so objecting by the fact that the interrogatories objected to were propounded by himself.

*Smith v. Capital Bank,* 34 Minn. 436, 439, 26 N.W. 234, 235 (1886); *see also* Minn. R. Civ. P. 32.02 (allowing objections to deposition testimony at time of trial), .04(c)(1) (providing that objections are not waived by failure to make them during deposition unless they could have been cured). Custom Conveyer argues that the district court's exclusion of the Eickelberg cross-examination was prejudicial, but does explain how the exclusion of any specific testimony was prejudicial. Accordingly, we conclude that the district court did not abuse its discretion by excluding the Eickelberg cross-examination.[3]

---

**3.** In its reply brief, Custom Conveyor asserts    that the district court erred by requiring it to

## DECISION

Because the district court did not err by denying Custom Conveyor's motion for JMOL, denying its request for commissions or letters rogatory to conduct trial depositions, or excluding exhibits 258 and 259 and portions of the Eickelberg deposition during trial, we affirm.

**Affirmed.**

identify specific portions of the cross-examination that it wished to admit, and giving it only 24 hours to do so. This argument is not made in Custom Conveyer's principal brief, and is thereby waived. *See McIntire v. State,* 458 N.W.2d 714, 717 n. 2 (Minn.App.1990) (explaining that issues not raised in principal brief cannot be revived in reply brief), *review denied* (Minn. Sept. 28, 1990). Moreover, we conclude that the district court properly exercised its discretion to manage the trial. TC/American argued, and the district court seems to have been persuaded, that none of the cross-examination was relevant, but the court nevertheless offered Custom Conveyer the opportunity to identify and argue for the admission of specific testimony.