*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2100**

Ernest Malisheske, et al.,
Appellants,

Great West Casualty Company,
Intervenor,

vs.

Kevin Kortan, et al.,
Respondents.

**Filed August 31, 2015
Affirmed
Schellhas, Judge**

Wright County District Court
File No. 86-CV-12-7075

Stephen D. Gabrielson, Gabrielson Law Offices, Ltd., Sartell, Minnesota (for appellants)

Mark S. Brown, Stephen M. Warner, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, Minnesota (for respondents)

Considered and decided by Stauber, Presiding Judge; Schellhas, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SCHELLHAS**, Judge

Appellants challenge the judgment entered in favor of respondents following a jury trial of appellants' personal-injury claims. We affirm.

# FACTS

Appellant Ernest Malisheske (Malisheske) is a commercial driver who had 35 years of experience at the time of the incident underlying this case. Appellant Marcia Malisheske is Malisheske's wife. Respondent Kevin Kortan also is an experienced commercial driver; he was employed by respondent Gary Kotek Trucking, Inc., at the time of the incident underlying this case.

At a truck stop on April 4, 2011, while Malisheske was conducting a walk-around inspection of his tractor-trailer, Kortan backed up his tractor and struck and injured Malisheske. While backing up his tractor, Kortan initially watched Malisheske through the passenger-side mirror but then switched to looking into his driver-side mirror. He struck Malisheske after Malisheske stepped backward without first looking around. Kortan assumed that Malisheske had seen him but admitted at trial that Malisheske had appeared to be focused on his own truck and had given no indication of seeing Kortan's tractor.

Malisheske and Marcia Malisheske (Malisheskes) brought an action against respondents, asserting claims of negligence against Kortan and vicarious liability and negligent retention, training, and supervision against Kotek Trucking. Respondents asserted contributory negligence as a defense. The district court denied the parties' cross-motions for summary judgment. The day before trial, the court heard and decided respondents' motions in limine and, on Kotek Trucking's oral motion for summary judgment, dismissed the direct-liability claims against Kotek Trucking.

Malisheskes asserted at trial that Kortan was negligent by backing up his tractor without first getting out to look behind the tractor or announce his presence. Malisheske testified that his employer, Daggett Truck Line, had provided him with testing that pertained to the safe operation of a commercial motor vehicle. He testified about the acronym, GOAL, which stands for "get out and look" and refers to procedures for backing up. Daggett safety compliance director Rana Holmer testified regarding safety training and testing that Daggett provided to its drivers. On cross-examination regarding GOAL, Holmer admitted that drivers do not need to get out and look before backing up when they can see what is behind them.

Kortan acknowledged GOAL but testified that GOAL was more applicable to backing up a tractor-trailer combination. He testified that for one trucker to back up his truck next to a space where another trucker was working on his truck was not unusual and that the standard in the trucking industry was not to honk or get out and look before backing up a truck when the path behind the truck was clear. He testified that he probably had worked on his own truck hundreds of times while another truck was backing up next to him, and that none of those other drivers had warned him before backing up. He also testified that he always watched where he was going when traveling on foot at truck stops.

Respondents' theory at trial was that Malisheske was talking on his cell phone while inspecting his tractor-trailer and therefore was distracted when Kortan's tractor struck him. Respondents relied on cell-phone records and testimony by Malisheske and other witnesses regarding how long a walk-around inspection takes and argued that

3

Malisheske must have been on the phone when he was struck. Malisheske denied being on the phone.

The jury returned a special verdict, finding that Kortan was not negligent in the operation of his vehicle, that Malisheske was negligent in connection with the accident, and that Malisheske's negligence was a direct cause of the accident. The district court ordered the entry of judgment on the verdict and denied Malisheskes' posttrial motions.

This appeal follows.

## D E C I S I O N

Malisheskes argue that the district court erred in its evidentiary rulings and jury instructions, its summary-judgment dismissal of the direct-liability claims against Kotek Trucking, and its denial of a new trial on the basis of an insufficient damages award. We affirm the judgment in favor of respondents and accordingly do not reach the damages arguments.

## I.

Malisheskes challenge the district court's summary-judgment dismissal of their direct-liability claims against Kotek Trucking. Minnesota Rule of Civil Procedure 56.03 provides that a motion for summary judgment shall not be served less than ten days before a hearing on the motion. But

> [t]he district court has the authority to grant summary judgment, sua sponte, when (a) no genuine issues of material fact remain, (b) one of the parties deserves judgment as a matter of law, and (c) the absence of a formal motion creates no prejudice to the party against whom summary judgment is granted.

4

*Hebrink v. Farm Bureau Life Ins. Co.*, 664 N.W.2d 414, 419 (Minn. App. 2003).

In this case, the district court asked Malisheskes' counsel whether he would like additional time to respond to Kotek Trucking's oral summary-judgment motion. Malisheskes' counsel did not request additional time. Before granting summary judgment, the court reviewed a memorandum submitted by Malisheskes in earlier summary-judgment proceedings, which summarized the evidentiary bases for the direct-liability claims. Malisheskes do not argue that they would have presented more or different evidence and therefore have not shown prejudice from the grant of summary judgment without additional proceedings. Nor do Malisheskes assert that, given additional time, they would have prevailed in opposing summary judgment. As such, any error by the court in considering the summary-judgment motion the day before trial, without the required notice, is harmless error that does not provide a basis for reversal. *See* Minn. R. Civ. P. 61 (requiring disregard of harmless error).

**II.**

Malisheskes challenge the district court's evidentiary rulings. "The admission of evidence rests within the broad discretion of the trial court and its ruling will not be disturbed unless it is based on an erroneous view of the law or constitutes an abuse of discretion." *Kroning v. State Farm Auto. Ins. Co.*, 567 N.W.2d 42, 45−46 (Minn. 1997) (quotation omitted). "Entitlement to a new trial on the grounds of improper evidentiary rulings rests upon the complaining party's ability to demonstrate prejudicial error." *Id.* at 46 (quotation omitted).

5

**A.      *Admission of evidence that Kortan did not receive a traffic citation***

Malisheskes assert that the district court erred by allowing evidence that Kortan did not receive a traffic citation as a result of striking Malisheske. As an initial matter, we must address whether this argument has been waived. Respondents assert that Malisheskes waived the argument by failing to object when respondents' counsel asked Daggett dispatcher Shellie Kremers about the lack of a citation. Because Malisheskes opposed respondents' pretrial request to admit the evidence, we agree with Malisheskes that the argument is preserved for appeal even though they did not object to the question posed to Kremers. *Cf.* Minn. R. Evid. 103(a) (providing that "[e]rror may not be predicated upon a ruling . . . admitting evidence [unless] a timely objection or motion to strike appears on the record").

When respondents' counsel asked Kremers about the lack of a citation, she testified that she did not know whether Kortan had received a citation. Malisheskes' counsel subsequently elicited testimony from Kortan that he had not received a citation. We conclude that Malisheskes waived any objection to the evidence that Kortan did not receive a citation by eliciting the evidence themselves. *See Ohler v. U.S.*, 529 U.S. 753, 755, 120 S. Ct. 1851, 1853 (2000) ("Generally, a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted."); *Jones v. Fleischhacker*, 325 N.W.2d 633, 639 (Minn. 1982) (explaining that error in admission of evidence may be waived when objecting party itself introduces evidence). Accordingly, we do not address the merits of Malisheskes' arguments in this regard.

**B.      *Exclusion of federal motor carrier safety regulations***

Malisheskes assert that the district court erred by excluding evidence of federal motor carrier safety regulations under Minn. R. Evid. 403. The court determined that, although the federal regulations were "minimally relevant," the probative value of evidence of the regulations was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. The court's pretrial order denying Malisheskes' summary-judgment motion reflects the court's review of the specific federal regulations cited by Malisheskes and the court's determination that Malisheskes did not allege that Kortan had violated any of them. Malisheskes do not dispute this determination. In fact, they concede that the regulations "do not contain specific details for every possible trucking maneuver, including backing maneuvers." Given this concession, the court did not abuse its discretion by excluding this evidence under rule 403. *See, e.g.*, *Ray v. Miller Meester Adver., Inc.*, 664 N.W.2d 355, 364 (Minn. App. 2003) (concluding that evidence with relatively low probative value and high likelihood of prejudice should have been excluded under rule 403), *aff'd on other grounds*, 684 N.W.2d 404 (Minn. 2004).

**C.      *Exclusion of safety training documents***

Malisheskes assert that the district court erred by excluding safety training documents that Daggett distributed to its drivers. At a pretrial hearing, the parties discussed the admissibility of these documents. Malisheskes argued that the documents were admissible as business records or otherwise under Minn. R. Evid. 803, without specifying a particular subparagraph of the rule. Respondents argued that the documents

7

were not regulations, did not establish an applicable standard of care, were hearsay, and would be prejudicial and confusing to the jury. The court ruled as follows:

> I will allow [Malisheskes] to offer testimony about Daggett's Trucking internal company practices, rules, policies. I am not going to allow any physical evidence. I mean, you can't offer the trucking or Daggett Trucking's internal company practices, rules and policies because it is hearsay. I don't believe you have the appropriate custodian of records to offer it as a business record. That's something that we can address later, but from what I have heard now, I don't think it falls under any of the hearsay exceptions except for a business record and I don't believe you have the appropriate custodian to testify to that.

> Perhaps . . . [the] safety director may be able to lay the appropriate foundation for a business record, but I will allow testimony about Daggett's Trucking International Company practices from people that have personal knowledge of those practices. So your safety director can come and testify about those practices, perhaps your client is aware of those policies and practices if that's who he is employed by, but you can't offer the documents.

On appeal, Malisheskes argue that the district court erred by excluding two of the documents: a safety test and a driver's manual. Malisheskes assert that the court should have admitted the documents as business records under rule 803(6). But to lay the foundation for the business-records hearsay exception, a qualified witness must testify that the records were kept in the course of a regularly conducted business activity and that it was the regular practice of that business to keep such records. *Nat'l Tea Co. v. Tyler Refrigeration Co.*, 339 N.W.2d 59, 61 (Minn. 1983). The witness must be familiar with how the records are kept. *See id.* at 61–62.

Malisheskes argue that the district court prevented them from making an offer of proof regarding Daggett's safety test and driver's manual before Holmer testified. Yet consistent with the court's pretrial ruling, the court allowed Malisheskes to elicit testimony from Holmer about safety training and testing that Daggett provided to its drivers. She testified that she created and distributed safety tests for Daggett using information from Daggett's insurance company and JJ Keller, an industry organization. But she did not testify regarding the generation by these entities of the underlying information, which testimony would have been necessary to lay a foundation for a business records exception to the hearsay rule. *See* Minn. R. Evid. 805 (providing that hearsay within hearsay is admissible only "if each part of the combined statements conforms with an exception to the hearsay rule"). And the record is unclear about who prepared the driver's manual.

We conclude that the district court did not abuse its discretion in its pretrial ruling or by denying Malisheskes' request to make an "offer of proof." One purpose of an offer of proof is to preserve an issue for appellate review. *See* Minn. R. Evid. 103(a) (providing that "[e]rror may not be predicated upon a ruling . . . excluding evidence" unless "the substance of the evidence was made known to the court by offer"). Here, respondents make no assertion that Malisheskes failed to properly preserve issues related to the admissibility of the safety training documents, and indeed we are addressing the issue on appeal. Moreover, an offer of proof is unnecessary when the substance of the excluded evidence is apparent from the record. *See id.* (providing that offer of proof is not necessary to preserve issue for review if "the substance of the evidence . . . was apparent

from the context within which the questions were asked"); *cf. In re Welfare of M.P.Y.*, 630 N.W.2d 411, 415 (Minn. 2001) (concluding that offer of proof was not necessary when substance of precluded testimony was apparent).

In this case, the record reflects both the nature of the evidence that Malisheskes sought to admit and the district court's understanding of that evidence. Under these circumstances, we conclude that the court did not err by preventing Malisheskes from making an offer of proof regarding the safety training documents. We also conclude that even if the court erred, the error was harmless. Malisheskes neither satisfied the foundational requirements to offer the safety test and driver's manual as business records nor persuade us on appeal that the safety training documents qualify as business records under rule 803(6).

Malisheskes also assert that they were prejudiced when the district court disallowed the use of the safety test to refresh Holmer's recollection after she answered "[n]o" when questioned about whether JJ Keller's materials included information about warning others that a truck is backing up. But Holmer did not testify that she did not remember whether such information was included. Instead, she testified that it was not included; therefore, the court properly disallowed use of a document to refresh Holmer's recollection. *See City of Minneapolis v. Price*, 280 Minn. 429, 435, 159 N.W.2d 776, 781 (1968) (cautioning that "memoranda should not be used to refresh a witness'[s] memory unless it is first ascertained whether the witness can recall the events in question without resort to a memorandum").

*D.*     *Other evidentiary issues*

In addition to the specific evidentiary challenges, Malisheskes assert that they were prejudiced through the district court's conduct in making evidentiary rulings, particularly when the court posed questions to a witness. Although a district court has the authority to interrogate witnesses, the preferred practice is for the court to limit its questioning of witnesses. *See* Minn. R. Evid. 614(b) (permitting district court to interrogate witnesses); *State ex rel. Hastings v. Denny*, 296 N.W.2d 378, 379 (Minn. 1980) (noting that district court's prerogative to examine witnesses "should be exercised with great caution, particularly when credibility . . . is at issue"); *Teachout v. Wilson*, 376 N.W.2d 460, 465 (Minn. App. 1985) (stating that questioning to clarify testimony is a proper exercise of district court's power), *review denied* (Minn. Dec. 30, 1985).

In this case, Malisheskes point to only one occasion on which the district court posed questions to a witness; the questions resulted in the witness acknowledging inconsistencies between his deposition and trial testimony, which acknowledgement Malisheskes' counsel had been unsuccessful in eliciting through his impeachment attempts. Accordingly, we conclude that any error by the court in this regard was harmless.

**III.**

Malisheskes argue that the jury instructions were erroneous. "The district court has broad discretion when selecting language for jury instructions." *Domagala v. Rolland*, 805 N.W.2d 14, 29 (Minn. 2011). "[Appellate courts] therefore review jury instructions for an abuse of discretion." *Id.* "A party is entitled to a specific instruction on his theory

11

of the case if there is evidence to support the instruction and it is in accordance with the applicable law." *Cornfeldt v. Tongen*, 262 N.W.2d 684, 698 (Minn. 1977). "A jury instruction is erroneous if, when read as a whole, the instruction materially misstates the law, or is apt to confuse and mislead the jury." *Domagala*, 805 N.W.2d at 29 (quotation and citations omitted). "[A]n appellate court should view the instructions as far as possible from the standpoint of the total impact or impression upon the jury." *Lieberman v. Korsh*, 264 Minn. 234, 240, 119 N.W.2d 180, 184 (1962).

Malisheskes assert that the district court erred by giving only the general negligence instruction and denying their request for additional instructions identifying specific traffic laws that they assert were implicated by Kortan's conduct. *See* 4 *Minnesota Practice*, CIVJIG 25.10, 65.25 (2006). Specifically, Malisheskes requested that the court instruct the jury on Minn. Stat. §§ 169.13, subd. 2 (careless driving), .14, subd. 3 (reduced speed required), and .21 (pedestrians). We conclude that any error in the failure to give a careless-driving instruction was harmless and that Malisheskes were not entitled to an instruction under either of the other two statutes.

The careless-driving statute is redundant of the general negligence instruction given by the court. *See In re Welfare of M.B.W.*, 364 N.W.2d 491, 493–94 (Minn. App. 1985) (stating that "[c]arelessness . . . can be synonymous with ordinary negligence"). Accordingly, Malisheskes cannot demonstrate prejudice resulting from the district court's failure to give an instruction on careless driving. *See Knox v. City of Granite Falls*, 245 Minn. 11, 20, 72 N.W.2d 67, 73 (1955) (finding no prejudicial error in district court's refusal to give requested jury instructions where "[t]he instructions given, considered as a

whole, adequately and fairly laid down the law of the case"). Malisheskes were not entitled to an instruction under the speed-reduction statute because there was no allegation that Kortan was traveling at excessive speed in this case. And Malisheskes were not entitled to an instruction under the pedestrian statute because that statute does not apply to parking lots. *See* Minn. Stat. §§ 169.011, subds. 68 (defining "[r]oadway" as "that portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the sidewalk or shoulder" (quotation marks omitted)), 81 (defining "highway" as "the entire width between boundary lines of any way or place when any part thereof is open to the use of the public . . . for the purposes of vehicular traffic" (quotation marks omitted)), .02 (providing that, unless a particular statute states otherwise, traffic statutes apply "exclusively to the operation of vehicles upon highways"), .21 (addressing obligations of drivers with respect to pedestrians in roadway) (2014).

**Affirmed.**