**INTEGRA LIFESCIENCES I, LTD., a Delaware corporation, and the Burnham Institute, a California non-profit corporation, Plaintiff,**

v.

**MERCK KGaA, a German corporation, the Scripps Research Institute, a California nonprofit corporation, Dr. David A Cheresh, a California citizen, and Does 1 through 25, inclusive, Defendants.**

No. CIV. 96–1307 TW AJB.

United States District Court,
S.D. California,
San Diego Division.

Nov. 2, 1999.

Lynne Brennan, David Beckwith, San Diego, CA, for plaintiff.

Patricia Thayer, San Francisco, CA, Martha Gooding, Newport Beach, CA, for defendants.

Order Denying Defendants' Motion for Leave to Take Trial Deposition of Dr. Kenneth Yamada [Doc. No. 726]; Denying Without Prejudice Plaintiffs' Motion to Exclude IXSYS IND Document Production and to Exclude Such Document at Trial [Doc. No. 730]

BATTAGLIA, United States Magistrate Judge.

Defendants have filed a motion for leave to take the trial deposition of Dr. Kenneth Yamada for use at trial in this case. Plaintiffs have filed a motion to exclude a particular document production, and for exclusion of the particular document at trial in this case. With regard to each motion, opposition, reply, and sur-reply papers have been filed. A hearing was held before Magistrate Judge Battaglia on October 26, 1999. Lynne Brennan and David Beckwith appeared on behalf of Plaintiffs. Patricia Thayer and Martha Gooding appeared on behalf of Defendants. For the reasons set forth herein, Defendants' motion is DENIED and Plaintiffs' motion is DENIED WITHOUT PREJUDICE.

## Background

Pursuant to this Court's May 6, 1998 Scheduling Order, all fact discovery was to have been completed by November 30, 1998 and all expert discovery was to have been completed by December 31, 1998. [Doc. No. 248]. The parties thereafter stipulated to several specific extensions of these discovery periods. [Doc. Nos. 399, 409, 436, 482]. According to these stipulations, the November 30, 1998 general fact discovery cut-off was not altered. The time for conducting percipient witness depositions was extended through December 11, 1998 [Doc. No. 399], and the last date to conduct expert witness depositions was extended to April 23, 1999 [Doc. No. 482].

All discovery in this case has now been completed. Substantial dispositive motions have been heard and determined. A pretrial conference was held before Judge Whelan on July 19, 1999 and the pretrial order defining the scope of this case for trial purposes has been filed. A substantial number of motions in limine are pending before Judge Whelan. The six week jury trial of this case has been tentatively scheduled for May of 2000, although the parties have been informed by Judge Whelan that a visiting judge may hear the trial of this case early in the year 2000.

## Discussion

### 1. Trial Deposition of Dr. Yamada

Defendants at this time seek leave to take the trial deposition of Dr. Kenneth Yamada. Yamada was not deposed during the ordinary course of discovery in this case. Although Yamada was listed by Defendants as a witness in the pretrial order, he is unavailable for live testimony at trial. As such, Defendants argue that Yamada's deposition testimony, as proposed, is admissible at trial pursuant to Fed.R.Civ.P. 32(a)(3)(B) and (E) and that they should be granted leave to take the deposition. Defendants seek to depose Yamada regarding two articles which he co-authored, *Fibronectin and Interactions at the Cell Surface, Matrices and Cell Differentiation,* 1–15 (1984) (referred to as the "1983 article" because it discusses experiments apparently conducted by Yamada in 1983) and *Dualistic Nature of Adhesive Protein Function: Fibronectin and Its Biologically Active Peptide Fragments Can Autoinhibit Fibronectin Function,* 99 *The Journal of Cell Biol-*

*ogy*, July 1984, at 29 (the "1984 Cell Biology article"). Defendants argue that Yamada's proposed testimony, along with the two articles, are relevant and necessary because they show that prior to the inventions claimed in Plaintiffs' '997 patent, Yamada synthesized and experimented with peptides that satisfy each and every element of claims 17 and 18 of the '997 patent. Defendants argue that they were unaware of Yamada's 1983 research, and the 1983 article, until June of 1999, but that the article was immediately produced to Plaintiffs upon its discovery.

Yamada is a commissioned officer in the United States Public Health Service, as Chief of the Craniofacial Developmental Biology and Regeneration Branch at the National Institutes of Health in Washington, D.C. Defendants procured the permission of the Deputy Director of the National Institutes of Health, as required under 45 C.F.R. Part 2, to obtain Yamada's testimony for use in this case. The department, however, has indicated that only a deposition will be permitted, rather than live testimony at trial, and that the deposition would be limited to "the timing and outcome of research he performed or supervised while in the United States Public Health Service and described in" the two publications referred to above. Defendants propose that they are entitled to take a deposition of Dr. Yamada at this time, to be used in lieu of his live testimony at trial. Defendants argue that Yamada has knowledge of relevant information to be presented at trial, and that his knowledge will otherwise not be put before the jury.

The Federal Rules of Civil Procedure do not distinguish between depositions taken for discovery purposes and those taken strictly to perpetuate testimony for presentation at trial. *Spangler v. Sears, Roebuck and Co.*, 138 F.R.D. 122, 124 fn. 1 (S.D.Ind.1991); *Henkel v. XIM Products, Inc.*, 133 F.R.D. 556, 557 (D.Minn.1991). Although Rule 32(a)(3)(B) & (E) provides circumstances under which depositions may be admissible as evidence at trial, that Rule does not distinguish between discovery and trial depositions or suggest when or under what circumstances a deposition to be used at trial should properly be taken.

The primary case cited by Defendants for the proposition that it is completely appropriate to allow them to take the deposition of Dr. Yamada at this time for purposes of presentation at trial is *Charles v. Wade*, 665 F.2d 661 (5th Cir.1982). In *Charles*, the Court of Appeals held that the district court erred in denying the plaintiff's motion to depose an incarcerated witness, who was unavailable to testify at trial. The identity of the witness was clearly known during the discovery time period, and the witness had substantial evidence to give in favor of the plaintiff. The district court denied the motion on the basis that the discovery period had closed. The Court of Appeal found, however, that the deposition sought was not for purposes of discovery, but merely for purposes of trial. *Id.* at 664. The court's decision in *Charles* is neither binding nor persuasive. The court does not cite or refer to any authority whatsoever for the distinction it makes between discovery and trial depositions. The court's decision also lacks any analysis of the wide latitude to be given to trial courts to manage their own cases. In addition, the case was decided prior to the 1993 Civil Justice Reform Act, which made significant changes to Rule 16 of the Federal Rules of Civil Procedure, including the requirement that a pretrial scheduling order be issued in most cases setting forth the time permitted to complete discovery and other matters. As such, the court's decision in *Charles* is rejected by this Court as authority for the relief Defendants seek.

The other authority cited by Defendants likewise does not establish any suitable parameters regarding the propriety of taking a deposition after the expiration of discovery, solely for purposes of presentation of that testimony at trial. The Court in *Spangler v. Sears, Roebuck and Co.*, 138 F.R.D. 122 (S.D.Ind.1991) allowed a party to continue to take depositions of persons who were unavailable for trial, even after the discovery cut-off, based upon "the longstanding customs and practices of this court in deferring the taking of [trial] depositions until shortly before trial." *Id.* at 126. The court explicitly acknowledged, however, that "no clear support for the concept of treating trial depo-

sitions differently than discovery depositions can be found in the Rules." *Id.* at 124, fn. 1. The Court in *Spangler* made no attempt to distinguish between circumstances where use of a "trial deposition" may be appropriate, and circumstances where it is a clear end-run around the discovery deadline under Rule 16.

Although Defendants argue vehemently that "trial depositions" are frequently used to facilitate efficient introduction of evidence at trial, Defendants fail to address how the court or parties should distinguish between "trial" depositions which must be completed within the discovery time period and those which have no time limits. Many of the witnesses in this case are likely "unavailable" for live testimony at trial. For instance, many of the key witnesses in this case are not parties to the litigation and are located outside the United States. They could not be compelled to come to Court to testify at trial. It is quite likely that in the course of this lengthy trial, at least one other witness's testimony will be presented to the jury through a previously recorded deposition. Under Defendants' theory of trial depositions, where they need not be taken during the discovery period so long as they are being used in lieu of live testimony at trial, nothing would keep the parties from waiting until after the close of discovery to take all of these "trial" depositions. This would effectively eliminate any need to conduct discovery of "unavailable" witnesses during the discovery period.

■ Based upon the lack of distinction in the Federal Rules between trial and discovery depositions, it has been held that there is no difference between the two, and that if a party wishes to introduce deposition testimony at trial, that testimony should procured during the time set by the court to conduct discovery absent exceptional circumstances. *Henkel*, 133 F.R.D. at 557–58. In *Henkel*, the court denied a request by defendant to take the "trial deposition" of a non-party witness who was deposed by plaintiff during discovery. During the discovery deposition, defense counsel did not ask any questions. It was undisputed that the witness had important and relevant testimony to offer at trial, but that he was beyond the subpoena

power of the court. The court found that merely designating the testimony to be taken as "for purposes of trial" did not take the deposition outside of the ordinary rules governing the timing of discovery. *Id.* The court went on to find that "[a] party who makes the tactical decision during a deposition to refrain from examining a witness who is beyond the subpoena power of the court, takes the risk that the testimony could be admitted at trial if the witness will not or cannot appear voluntarily." *Id.* at 557.

■ The Court finds this reasoning persuasive. Where a party makes a tactical decision during discovery to refrain from deposing a non-party witness who is beyond the subpoena power of the court, but who has relevant information to offer in the case, that party takes the risk that the testimony will not be presented at trial if the witness does not voluntarily appear. This is not to say that there may be appropriate circumstances under which a party could proceed to take a deposition of a witness to perpetuate testimony for trial. For instance, if Dr. Yamada had lived and worked in San Diego for the last twenty years, and suddenly moved to Washington, D.C., outside the Court's subpoena power, Defendants could probably establish good cause to take the deposition. Another example of appropriate cause to take a trial deposition would be where a witness becomes seriously ill and is physically unable to testify at trial. Denial of leave to conduct trial depositions under these circumstances would constitute "a miscarriage of justice." *Henkel*, 133 F.R.D. at 558.

However, Defendants have not shown exceptional circumstances or good cause to pursue discovery from Dr. Yamada at this time in the litigation.

Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed.R.Civ.P. 16 advisory committee's notes (1983 amendment).... Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.... Although the

existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.

*Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir.1992). The 1984 Cell Biology article was clearly known to Defendants well in advance of the general discovery cut-off as it was listed by Defendants, in March 1998 interrogatory responses, as prior art with regard to the '237 patent which is also at issue in this case. As pointed out by Defendants, Plaintiffs also produced articles by Yamada during discovery in this case, and the 1984 Cell Biology article is cited as a reference in U.S. Patent No. 4,789, 734 (which is also at issue in this case). The 1984 Cell Biology article, and its importance to many of the issues in this case, were well known to both parties well before the November 30, 1998 discovery cut-off.

With regard to the remaining "1983 article," Defendants state that they only became aware of the article in June of 1999, and that it was immediately disclosed and produced to Plaintiffs upon its discovery. In fact, in their moving papers Defendants assert that if they had been aware of the importance of Dr. Yamada's testimony prior to the discovery cutoff date, they would have requested the appropriate agency approval to conduct his deposition in their discovery efforts. At the hearing held with regard to this motion, however, Plaintiffs' counsel pointed out that the "1984 Cell Biology" article, that has been in the possession of all counsel since at least March of 1998, refers to the 1983 Wales conference. Defense counsel acknowledged that they knew of the Wales conference at least in the fall of 1998 and asked Dr. Yamada about that conference and whether there was any written memorialization of the materials presented there. Defense counsel stated at the hearing that upon inquiry last fall,

Yamada did not remember that he had co-authored an article regarding the matters presented at the conference, but that Yamada contacted counsel in June of 1999, recalling that he had, in fact, written the "1983 article" and providing copies of that article. These earlier inquiries of Yamada regarding the Wales conference directly contradict Defendants' arguments that they were unaware of the importance of Yamada's testimony prior to the discovery cutoff date.

Finally, Defendants cannot argue the Deputy Director of the National Institutes of Health's determination that Dr. Yamada may not appear in person at trial is an "exceptional circumstance." Implicit in the knowledge that the permission of the Deputy Director had to be obtained regarding Yamada's trial appearance is the possibility that permission would be denied. Defendants cannot credibly maintain that they could not have anticipated that an individual in Dr. Yamada's position, residing and working on the opposite side of the country, would not be able to testify live at trial. Defendants argue that in all their conversations with Dr. Yamada he never suggested that he would not be able to come to testify live at trial. However, Defendants do not go the next step and state that Yamada ever suggested he *would* be able to testify live at trial. It appears Defendants made a tactical decision not to depose Yamada during discovery, but never confirmed that he would be able to testify live at trial.

Defendants cannot show they have exercised diligence in not obtaining a discovery deposition of Dr. Yamada earlier in this case. While it is certainly permissible for a party to continue its informal investigation of facts underlying claims in a case after the expiration of the discovery period, Defendants' attempt to engage in formal discovery is improper. *Rice v. United States,* 164 F.R.D. 556, 557 (N.D.Okl.1995). For this reason, Defendants' motion is denied.[1]

---

1. Because Defendants have failed to establish that the discovery sought could not have been obtained in the exercise of diligence within the permissible time period, the Court need not consider the potential prejudice to Plaintiffs. However, the court notes that if Defendants were permitted to take the trial deposition, and inquire of Dr. Yamada regarding when he conducted his experiments and what work he performed, all in the name of a "trial deposition," Plaintiffs would suffer prejudice. If Yamada were permitted to testify regarding what he did, and when he per-

## 2. The IXSYS IND document

In a related vein, Defendants listed as an exhibit on the pretrial order "filings by IXSYS with the FDA." As of the time of the pretrial conference, however, Defendants did not have a copy of this document and had not provided it to counsel for Plaintiffs. On August 9, 1999, a trial subpoena was served on IXSYS (because of an error, Plaintiffs were not served with a copy of the subpoena until August 13, 1999) seeking production of the IXSYS IND for trial on September 20, 1999 (which at that time was a date for which trial was scheduled). In order to avoid appearance at trial by a representative of IXSYS, one of Defendants' attorneys, Martha Gooding, spoke with individuals at IXSYS who agreed to the production of the document prior to trial.

On August 30, 1999, Gooding spoke with Mauricio Flores, lead trial counsel for Plaintiffs regarding IXSYS subpoena. Receiving no perceivable objection from Flores regarding the subpoena, and having received no other objection from the subpoenaed party or opposing counsel, Gooding contacted a copy service and made arrangements for copying of the IXSYS IND. It appears those copies were made by the copy service on September 3, 1999 and forwarded to counsel for Defendants.

Plaintiffs' counsel argues that they contacted defense counsel on September 3, 1999, indicated their objection to the trial subpoena, and requested a meet and confer. Given the number of attorneys working on this case from both sides, it understandably took several days for the appropriate attorneys knowledgeable regarding the production of the IXSYS IND to touch base. By that time, the document had already been produced to counsel for Defendants, and a copy had already been provided to counsel for Plaintiffs. Plaintiffs argue that the subpoena to IXSYS was improper as it was beyond the discovery

cut-off period, and that defense counsel improperly refused to meet and confer prior to actually obtaining the documents. Plaintiffs seek an order from the court "excluding the production" of the IXSYS IND, and also an order excluding its use at trial. Plaintiffs already have on file before Judge Whelan a motion in limine seeking to bar use of the document at trial.

Although Plaintiffs purport to move the Court "for an Order excluding the Ixsys IND document production", it is clear that what Plaintiffs seek is an order excluding the IXSYS IND from admission into evidence at trial. Defendants already have the document, so Plaintiffs' only remedy is an order prohibiting Defendants from introducing the document into evidence at trial.

■ Plaintiffs are correct in their assertion that the subpoena issued by Defendants was an improper use of discovery devices after the close of discovery in this case. Case law establishes that subpoenas under Rule 45 are discovery, and must be utilized within the time period permitted for discovery in a case. *See Marvin Lumber & Cedar Co. v. PPG Industries, Inc.*, 177 F.R.D. 443, 445 (D.Minn.) (subpoenas under Rule 45, invoking the authority of the court to obtain the pretrial production of documents and things, are discovery within the definition of Fed.R.Civ.P. 26(a)(5) and are therefore subject to the time constraints that apply to all other methods of formal discovery); *Puritan Inv. Corp. v. ASLL Corp.*, 1997 WL 793569 (E.D.Pa.1997) (where party could not show information sought was unknown during discovery, party could not use trial subpoena to secure production of documents at trial); *Rice v. United States*, 164 F.R.D. 556, 558 (N.D.Okl.1995) (subpoenas duces tecum for particular records, issued to third parties after close of discovery for purposes of discovering impeachment material, were quashed as improper attempt to engage in

formed his work, Plaintiffs would need to obtain and review Yamada's laboratory notebooks from the time period in question in order to be able to effectively cross-examine him regarding his testimony. Plaintiffs also anticipate a potential need to depose Yamada's lab assistant and co-authors to ascertain the exact nature of the experiments and the extent to which Yamada's findings were

made public so as to qualify as prior art. Finally, Plaintiffs raise the possibility that their experts would need to review the lab notebooks and/or deposition testimony of Yamada in order to rebut the argument that his research constitutes prior art. The Court finds no justification for imposing this potential burden upon Plaintiffs at this point in this case.

discovery after designated time period); *BASF Corp. v. Old World Trading Co.*, 1992 WL 24076 (N.D.Ill.1992) (trial subpoenas quashed as improper discovery after close of appropriate time period). Although narrow exceptions to this rule exist (for instance a trial subpoena could be used to secure an original document, copies of which were obtained during discovery, where there is an objection regarding authenticity of the document for admission at trial, *see Puritan Inv. Corp.*, 1997 WL 793569 at \*1 and cases cited therein), none of those exceptions apply here.

Defendants' citation to authority which establishes the propriety of "trial subpoenas," and the scope of their proper use to obtain documents for use at trial, are unpersuasive. For instance, the court in *United States v. IBM Corp.*, 477 F.Supp. 698, 699 (S.D.N.Y. 1979) simply denied a motion to quash a trial subpoena for records, *without any discussion whatsoever* of the appropriateness of the device used or the timing of its use. In addition, Defendants cite *Puritan Inv. Corp.* for the proposition that "trial subpoenas may be used to secure documents at trial for the purpose of . . . trial preparation or to ensure the availability at trial of original documents previously disclosed by discovery." The portion of the court's opinion in that case that Defendants failed to include, however, was that the court in that case quashed a purported trial subpoena as an improper means to engage in discovery after the cut-off date. *Puritan Inv. Corp.*, 1997 WL 793569 at \*2. Finally, although the court in *Rice* did comment that a discovery cut-off did not bar a party from conducting an investigation for impeachment material or from performing other, more general, trial preparation, the court stressed that the further investigation after a discovery cut-off *may not invoke the authority of the court* (i.e. the issuance of a

subpoena under Rule 45). *Rice*, 164 F.R.D. at 557.

Having established, however, that Defendants' subpoena to IXSYS was an improper attempt to obtain discovery after the cut-off date in this case, the question is what should be done by this Court now that Defendants have obtained the document? Beyond issuing a subpoena beyond the discovery cut-off, the Court finds that Defendants did not act improperly. Although Plaintiffs argue misconduct on the part of counsel for proceeding to obtain the document after they had requested a meet and confer preliminary to the filing of a motion to quash, the declarations establish that by the time the request for a meet and confer was made, and communicated to the proper attorney handling this issue, the document had been copied and provided to Defendants. Having admittedly learned of the subpoena on August 16, 1999, Plaintiffs' counsel cannot be said to have acted with the greatest of diligence in waiting 18 days [2] to send a letter to opposing counsel to request a meet and confer preliminary to a motion to quash.[3] No discovery misconduct of the type which would justify exclusion of evidence at trial has been demonstrated.

■ As pointed out by Defendants in their opposition, the document was listed as an exhibit for trial. Plaintiffs have been provided a copy of the document. In the reply, Plaintiffs state that although they knew of the existence of the voluminous and highly technical document (the IXSYS IND apparently exceeds 2000 pages in length), they did not know the contents of that document and their experts were not able to review the contents with regard to their opinions. Plaintiffs have filed a motion in limine seeking to exclude as evidence at trial all documents which were listed as exhibits, but which were not provided to them prior to the

**2.** Rule 45 provides that a where there is an objection to a subpoena, the person commanded to produce documents may serve written objections within 14 days after service of the subpoena (which in this case was on August 13, 1999). As such, if IXSYS had any objections to the subpoena, those objections would have been made before the end of August. It appears Plaintiffs took no action whatsoever to block production of the materials prior to the expiration of this objection period.

**3.** Defendants dispute Plaintiffs' standing to move to quash the subpoena. Although Rule 45 only appears to authorize such a motion by the subpoenaed party, any party to the litigation would have the right to move for a protective order where the subpoena was in violation of case management orders issued under Fed.R.Civ.P. 16 and 26. *Marvin Lumber*, 177 F.R.D. at 445.

pretrial conference. Without prejudice to Plaintiffs making an argument before the trial judge under the currently-filed motion in limine, Plaintiffs have not here made a sufficient showing of prejudice due to the late production of the IXSYS IND to justify the discovery sanction of exclusion of the document at trial. Plaintiffs' motion is DENIED.

### Conclusion

For the reasons set forth herein, Defendants' motion for leave to take the trial deposition of Dr. Kenneth Yamada is DENIED. In addition, Plaintiffs' motion to exclude production of the IXSYS IND, and to bar its admission at trial is DENIED WITHOUT PREJUDICE to any determination by the trial judge on the pending motions in limine.

IT IS SO ORDERED.