TC/AMERICAN MONORAIL,
INC., Respondent,

v.

CUSTOM CONVEYOR
CORPORATION,
Appellant.

No. A11–2119.

Supreme Court of Minnesota.

Dec. 18, 2013.

Paul F. Shoemaker, Shoemaker & Shoemaker, PLLC, Michael K. Hoverson, Hoverson Law Offices, P.A., Minneapolis, MN, for respondent.

Mark V. Steffenson, Henningson & Snoxell, Ltd., Maple Grove, MN, for appellant.

Robert J. King, Jr., Kay Nord Hunt, Bryan R. Feldhaus, Lommen, Abdo, Cole, King & Stageberg, P.A., Minneapolis, MN, for amicus curiae Minnesota Association for Justice.

## OPINION

DIETZEN, Justice.

The issue in this case is whether a party may take a deposition to preserve trial testimony of an unavailable, out-of-state witness, even though the deposition would occur after a discovery deadline in a scheduling order. Respondent TC/American Monorail, Inc., brought this civil action to recover payment for industrial equipment that it fabricated for appellant Custom

Conveyor Corporation. Custom Conveyor counterclaimed for breach of contract. Following a jury trial, the district court entered judgment in favor of TC/American for $208,428. Custom Conveyor moved for judgment as a matter of law or a new trial on various grounds, arguing, among other things, that the district court erred by granting TC/American's motion for a protective order to preclude the depositions of two out-of-state witnesses from going forward shortly before trial. The district court denied the motion, and the court of appeals affirmed. Because we conclude that the district court abused its discretion by denying the motion for a new trial and by granting the underlying motion for a protective order, and that Custom Conveyor was prejudiced by these rulings, we reverse and remand for a new trial.

In 2009 Custom Conveyor entered into a contract with the City of North Las Vegas, Nevada, to supply equipment needed for a wastewater treatment facility construction project. Custom Conveyor manufactured certain components of the equipment itself and solicited bids for fabrication of the other components, including four steel hoppers and support stands.

TC/American submitted a bid of $305,000 for fabrication of the hoppers and support stands. The hoppers would be connected to the stands with field weld joints. In preparing the bid, the TC/American project manager communicated to Custom Conveyor that TC/American was a "D1.1 shop," which means that its welders were certified to the D1.1 standard of the American Welding Society. The D1.1 standard provides that welds must pass visual inspection, but not electronic testing. Custom Conveyor ultimately selected TC/American's bid.

When the first shipment of TC/American's product arrived at the project site, the City expressed dissatisfaction with the quality of the welds. Custom Conveyor notified TC/American, and TC/American agreed to have the product returned to its plant for repairs. Upon return, TC/American's project manager and quality control manager inspected the product and determined that some of the disputed welds did not conform to D1.1 standards.

TC/American repaired and reshipped the product to the project site and made several additional shipments through December 2009. The City again objected to the quality of the welds. Custom Conveyor asked TC/American to perform additional repairs on the product, but TC/American refused. TC/American asserted that its welds met the D1.1 standard of visual inspection and that is was not obligated to satisfy the City's higher electronic testing. In the end, Custom Conveyor elected to fix and use the hoppers fabricated by TC/American, but did not use the support stands. TC/American sent invoices for its product, and Custom Conveyor refused to pay the invoices in full.

In April 2010, TC/American sued Custom Conveyor for breach of contract and failure to pay for goods sold and delivered on the North Las Vegas project and two other projects. Custom Conveyor counterclaimed for breach of contract. In September 2010, the district court issued a scheduling order establishing a discovery deadline of January 21, 2011, a deadline to file pretrial motions by March 18, 2011, and a trial date of June 20, 2011.

On April 29, 2011, Custom Conveyor filed a request with the district court for authorization to obtain subpoenas to take trial depositions of two witnesses located in Las Vegas, Jay Brown and Manuel Israel, during the week of June 6, 2011. Custom Conveyor alleged that it intended to call both witnesses to testify at trial, but that when it contacted them in March

2011, it learned they would not voluntarily travel to Minnesota for trial. TC/American opposed the request and filed a motion for a protective order to preclude the depositions, arguing that the depositions were barred because they were outside the discovery deadline in the scheduling order.

The district court denied Custom Conveyor's deposition request and granted TC/American's motion for a protective order. The court reasoned that Custom Conveyor failed to present sufficient reasons for the delay in its request for assistance in compelling the depositions and failed to demonstrate the necessity of the testimony of the witnesses to its case. Additionally, the court concluded that prejudice to TC/American would result if Custom Conveyor was allowed to conduct the depositions two weeks before trial.

Following trial, the jury found for TC/American on its claim for payment of its invoices but also found that TC/American breached a portion of the contract. The net award was in favor of TC/American for $208,428. Custom Conveyor moved for judgment as a matter of law or a new trial, arguing, among other things, that the district court erred in refusing to permit the taking of the depositions of the out-of-state witnesses to preserve their testimony for trial. The district court denied the motion and entered judgment.

The court of appeals affirmed. *TC/Am. Monorail, Inc. v. Custom Conveyor Corp.,* 822 N.W.2d 812, 817–19 (Minn.App.2012). The court concluded that the district court did not abuse its discretion by enforcing the discovery deadline in denying the deposition requests. *Id.* at 817–18. The

court reasoned that Custom Conveyor failed to show good cause for extending the deadline to allow the depositions to be taken. *Id.* at 818–19.

## I.

Custom Conveyor argues that the district court erred in three interrelated ways: by denying its request to take depositions to preserve trial testimony of the unavailable out-of-state witnesses; by granting TC/American's motion for a protective order to preclude depositions; and by denying its motion for a new trial. According to Custom Conveyor, a deposition to preserve trial testimony, unlike a discovery deposition, is not governed by the discovery deadline in the scheduling order. TC/American responds that the deposition request was barred by the discovery deadline, and that Custom Conveyor failed to show good cause for extending the deadline.

 We review the district court's rulings in this case for an abuse of discretion.[1] *Frazier v. Burlington N. Santa Fe Corp.,* 811 N.W.2d 618, 629 (Minn.2012) (reviewing a district court's ruling on a motion for a new trial for an abuse of discretion), *modified,* (Minn. Apr. 19, 2012); *Erickson v. MacArthur,* 414 N.W.2d 406, 407 (Minn.1987) (reviewing a district court's ruling on a discovery matter for an abuse of discretion). The district court abuses its discretion if it bases its ruling on an improper application of the law to the facts. *In re Comm'r of Pub. Safety,* 735 N.W.2d 706, 711 (Minn.2007). The interpretation of the rules of civil procedure, however, is a question of law that

---

1. In its motion for a new trial, Custom Conveyor repeated the arguments it had made previously in support of its deposition request. The district court denied the motion for a new trial in a single sentence, relying on its decision at the time it granted TC/American's mo-

tion for a protective order. In light of these circumstances, instead of referring to all three rulings by the district court, we will refer to only the district court's grant of the motion for a protective order.

we review de novo. *T.A. Schifsky & Sons, Inc. v. Bahr Constr., LLC,* 773 N.W.2d 783, 786 (Minn.2009).

To resolve the issue raised in this case, we must first determine whether the discovery deadline in the scheduling order applies to Custom Conveyor's deposition request; and then decide whether the district court abused its discretion by granting TC/American's motion for a protective order. We will address each question in turn.

### A.

■ The scheduling order provides: "Formal discovery shall be completed by January 21, 2011." The word "discovery" in the scheduling order clearly refers to that term as it is used in the Minnesota Rules of Civil Procedure. Several different discovery methods, including depositions upon oral examination, are described in these rules. *See* Minn. R. Civ. P. 26.01, 27–36. Rule 30.01 allows a party to take a deposition of any person 30 days after the action is commenced and before the case is completed in the district court. Minn. R. Civ. P. 30.01. The rule does require that leave of the court be obtained to take a deposition within 30 days of the commencement of the action. *Id.*[2]

Additionally, Rule 16 provides that the district court may enter a scheduling order that establishes deadlines for the parties to finish certain tasks, including the completion of "discovery." Minn. R. Civ. P. 16.02(c). The term "discovery" includes a deposition under Rule 30.01. The court has broad discretion to impose deadlines to manage its calendar. *See McIntosh v. Davis,* 441 N.W.2d 115, 119 (Minn.1989). Here, the court filed a scheduling order that established a deadline for discovery, which TC/American argues precludes the requested depositions of the out-of-state witnesses.

Custom Conveyor, however, argues that there is a practical distinction between a discovery deposition and a deposition to preserve trial testimony of an unavailable, out-of-state witness, and therefore a deposition to preserve trial testimony is not precluded by the discovery deadline in the scheduling order. By "unavailable," we mean an out-of-state witness not subject to subpoena who has affirmatively stated that he or she is unwilling to come to Minnesota to testify at trial. TC/American counters that the scheduling order covers all depositions because the rules of civil procedure do not distinguish between discovery depositions and depositions to preserve trial testimony.

It is true that the Minnesota Rules of Civil Procedure do not distinguish between discovery depositions and depositions to preserve trial testimony. *See* Minn. R. Civ. P. 30.01 (permitting a party to take the testimony of any person "by deposition upon oral examination" without differentiating between types of depositions); Minn. R. Civ. P. 32.01 (allowing a party to introduce "any part or all of a deposition" at trial in a number of situations without referring to the purpose for which the deposition was taken); Minn. R. Civ. P. 45.01(a)(3), (b), (d) (authorizing the district court to issue a subpoena to compel a witness's "attendance at a deposition" without regard to the reason for the deposition).

While the Minnesota Rules of Civil Procedure do not distinguish between discov-

---

**2.** Rule 26.04(a), as amended effective July 1, 2013, now requires parties to wait to seek discovery until a discovery plan is prepared. Because TC/American's motion for a protec-tive order and this appeal were brought under the Rules of Civil Procedure as adopted before the 2013 amendments, we rely only on the pre-amendment version of the rules.

ery depositions and depositions to preserve trial testimony, the purposes of the two types of depositions are very different. On the one hand, a discovery deposition is usually taken by a party to discover the testimony that a witness may give if called to testify at trial, as well as to cross-examine the witness to test the knowledge of the witness and to obtain admissions from the witness. On the other hand, the purpose of a deposition to preserve trial testimony is not to learn what a witness knows and might testify to at trial; instead, the purpose is to preserve the testimony of the witness for use at trial. *See generally* 1A David F. Herr & Roger S. Haydock, *Minnesota Practice—Civil Rules Ann.* § 30:7 (5th ed.2010) (stating that a deposition to preserve trial testimony may be taken after the discovery deadline in a scheduling order because "the purpose of the deposition is not to discover information but to preserve the testimony of a witness who will be unavailable for trial").

Similarly, the Federal Rules of Civil Procedure do not distinguish between discovery depositions and depositions to preserve trial testimony. *See* Fed.R.Civ.P. 30; *Tatman v. Collins,* 938 F.2d 509, 510 (4th Cir.1991) (concluding that the Federal Rules of Civil Procedure draw no distinction between depositions taken for discovery and depositions taken for use at trial). But some federal cases have drawn a

practical distinction between discovery depositions and depositions to preserve trial testimony and have permitted taking depositions to preserve trial testimony after the expiration of the discovery deadline.[3] *See, e.g., Estenfelder v. Gates Corp.,* 199 F.R.D. 351, 352–56 (D.Colo.2001) (concluding that courts cannot ignore a party's need to *preserve* testimony for trial, as opposed to the need to *discover* evidence, simply because the period for discovery has expired); *Spangler v. Sears, Roebuck & Co.,* 138 F.R.D. 122, 125–26 (S.D.Ind. 1991) (granting request to take depositions to preserve trial testimony of witnesses who are unavailable for trial based upon the customary practice in that judicial district).

We conclude that a deposition to preserve trial testimony of an unavailable, out-of-state witness is not covered by a general discovery deadline in a scheduling order. Indeed, a practical distinction exists between a discovery deposition and a deposition to preserve trial testimony of an out-of-state witness that justifies different treatment.

### B.

We next examine what criteria the district court should use to decide whether a motion to take a deposition to preserve trial testimony should be granted. Rule 30.01 provides that a party may take a deposition of any person beginning 30 days

---

**3.** We acknowledge that other federal cases have affirmed a district court's decision to preclude a deposition to preserve trial testimony on the ground that such depositions would take place after the discovery period has expired. *See, e.g., Chrysler Int'l Corp. v. Chemaly,* 280 F.3d 1358, 1360–62 (11th Cir. 2002) (concluding that the district court did not abuse its discretion by enforcing the discovery deadline in the scheduling order because the moving party knew the witness resided on a different continent and understood the uncertainties and delay in obtaining that

testimony); *Trepel v. Roadway Express, Inc.,* 194 F.3d 708, 716 (6th Cir.1999) (holding that the district court did not abuse its discretion by preventing the moving party from deposing an out-of-state witness on the eve of trial when the party failed to take the deposition during the 6–month discovery period). These cases, however, are predicated in part upon the failure of the moving party to bring a timely motion to take a deposition to preserve trial testimony. *See Chrysler,* 280 F.3d at 1361–62; *Trepel,* 194 F.3d at 715–16.

after the action is commenced, and continuing until the case is completed in the district court. Minn. R. Civ. P. 30.01. Thus, the Minnesota Rules of Civil Procedure do not expressly limit the taking of a deposition to preserve trial testimony. But under Rule 26.03, a party who opposes a request to take a deposition to preserve trial testimony may file a motion for a protective order to preclude or otherwise limit the deposition. Minn. R. Civ. P. 26.03.

■ A motion for a protective order places the burden on the party opposing the proposed deposition to show "good cause" for denying the request. *See id.* If the court finds good cause, it may grant relief, including that the deposition not be taken, that its scope be limited, or that the deposition only occur at a designated time or location. *See id.* Generally, "good cause" means a "legally sufficient reason." *See Black's Law Dictionary* 251 (9th ed.2009). We have not addressed the meaning of good cause in the context of opposing the taking of a deposition to preserve trial testimony of an unavailable, out-of-state witness after the discovery deadline in a scheduling order has expired. Several federal courts, however, have broadly considered the necessity of the testimony to the deposing party's case as compared to the relative fault of the deposing party in not conducting the deposition during the discovery period. *See Chrysler Int'l Corp. v. Chemaly,* 280 F.3d 1358, 1362 (11th Cir.2002); *Charles v. Wade,* 665 F.2d 661, 664–65 (5th Cir. Unit B 1982); *see also Estate of Gee v. Bloomington Hosp. & Health Care Sys., Inc.,* No. 1:06–cv–00094–TWP–TAB, 2012 WL 729269, at *6 (S.D.Ind. Mar. 6, 2012); 1 Steven S. Gensler, *Federal Rules of Civil Procedure, Rules and Commentary* Rule 30 (2013), *available at* Westlaw, Litigation Texts & Treatises.

■ Because we conclude that the scheduling order did not cover the depositions to preserve trial testimony in this case, the principles of these federal cases are not directly applicable.[4] Instead, the district court should consider all of the relevant evidence to determine whether good cause for denying the deposition request is established, including the following factors: (1) the primary purpose for taking the deposition (i.e., whether it is truly for preserving trial testimony or is a pretext for conducting late discovery); (2) the materiality and importance of the de-

---

**4.** The concurrence and dissent suggests that the court should refer the interpretation of "good cause" in Rule 26.03 to a rulemaking body, presumably the Supreme Court Advisory Committee on the Minnesota Rules of Civil Procedure, which would then propose amendments to the rule. We disagree. To determine whether the district court erred in granting the motion for a protective order required the court to interpret the meaning of "good cause" and apply it to the facts of the case. Indeed, courts routinely interpret the meaning of "good cause" in civil rules. *See, e.g., Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.,* 307 F.3d 1206, 1210–11 (9th Cir.2002) (discussing what "good cause" means in the context of Fed.R.Civ.P. 26(c)); *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 787–88 (3d Cir.1994) (stating that courts should examine seven factors in determining whether good cause exists for a protective order). Moreover, this court routinely interprets the rules that apply to different types of court proceedings. *See, e.g., State v. Hohenwald,* 815 N.W.2d 823, 830 (Minn.2012) (interpreting the term "proceedings" in Minn. R.Crim. P. 20.01, subd. 3); *Mingen v. Mingen,* 679 N.W.2d 724, 726 (Minn.2004) (interpreting Minn. R. Civ. P. 52.02 and Minn. R. Civ.App. P. 104.01 and holding that appellant's motion to amend the district court's order was not timely); *Finden v. Klaas,* 268 Minn. 268, 271, 128 N.W.2d 748, 750–51 (1964) (interpreting Minn. R. Civ. P. 60.02 and creating a four-part rule analyzing when a defendant should be relieved of a final judgment against him due to his attorney's neglect).

position testimony to the deposing party's argument; (3) the potential for unfair prejudice to the opposing party; and (4) the amount of time remaining before the date set for trial.

■■■ In summary, we recognize the right of a party to take a deposition to preserve trial testimony of an unavailable, out-of-state witness if the deposition for the preservation of evidence is not specifically covered by a scheduling order deadline.[5] Indeed, a practical distinction exists between a discovery deposition and a deposition to preserve trial testimony of an out-of-state witness caused by the witness's unavailability to testify at trial. This right, however, is subject to the right of the opposing party to bring a motion for a protective order and to show good cause why the deposition should not be taken. We recognize that the timing and location of a deposition in a given case may result in prejudice to the opposing party and constitute good cause for not taking the deposition or other appropriate relief. But it is within the district court's discretion, based on the specific facts of a case, to determine whether the party objecting to the deposition has established good cause.

## II.

■■■ Having concluded that a deposition to preserve trial testimony of an unavailable, out-of-state witness does not fall within the scope of the scheduling order in this case, we turn next to whether the district court abused its discretion by granting TC/American's motion for a protective order to preclude Custom Conveyor's depositions of the out-of-state witnesses.

In support of its request to take the depositions to preserve trial testimony, Custom Conveyor's lawyer represented to the district court that the out-of-state witnesses had knowledge regarding the dispute and that their testimony was necessary to support Custom Conveyor's claim and affirmative defenses in the litigation. Custom Conveyor's lawyer informed the court that Brown, who was the City's program director in charge of the water reclamation project at issue, would testify regarding the construction project, including the work performed and acceptance of the materials supplied. He further indicated that Israel, who was the third-party inspector who had performed tests on the welds, would testify regarding his observations and testing of the product at issue. The lawyer stated that he recently learned the witnesses were unwilling to travel to Minnesota and were therefore unavailable to testify. The lawyer also noted that Brown and Israel were identified as potential witnesses in the discovery responses and the parties' joint statement of the case.

TC/American opposed the deposition request and filed a motion for a protective order. It argued that the depositions were covered by the discovery deadline in the scheduling order, and therefore could not be taken without a showing of good cause. Further, TC/American argued that

---

**5.** The concurrence and dissent suggests that the court should expand its holding in this case to apply to depositions of unavailable witnesses located in Minnesota but outside the county in which the action is pending. The question of whether a party is permitted to take a deposition to preserve trial testimony of witnesses located in Minnesota has not been raised or briefed by the parties, and therefore we decline to reach it. *See, e.g., A.A.A. v. Minn. Dep't of Human Servs.,* 832 N.W.2d 816, 821 n. 3 (Minn.2013); *Miller v. Lankow,* 801 N.W.2d 120, 129 (Minn.2011). Such a deposition may raise issues regarding Rule 26.03 and Rule 45 of the Minnesota Rules of Civil Procedure for which the court does not have the benefit of briefs and argument from the parties.

it would be prejudiced if the depositions occurred two weeks before trial.

Without having the benefit of our decision here, the district court applied the wrong legal standard to the deposition request and motion for a protective order. Specifically, the court should have required TC/American to establish good cause for precluding the depositions; instead, the court placed the burden on Custom Conveyer to show good cause for taking the depositions. In its order, the district court did not properly distinguish between the two types of depositions, or indicate whether Custom Conveyor could have reasonably anticipated the unavailability of the witnesses. Custom Conveyor's lawyer represented to the district court that the purpose of the depositions was to preserve the trial testimony of the two witnesses, that the lawyer knew the nature and scope of the witnesses' testimony before the expiration of the discovery deadline, and that the lawyer learned in March 2011 that the witnesses were unwilling to travel to Minnesota to testify and therefore were unavailable. TC/American did not challenge these representations. Thus, it is undisputed that the purpose in taking the depositions was to preserve trial testimony, that the lawyer knew the scope of Brown and Israel's proposed testimony, and that the lawyer did not know until March 2011 that the witnesses would be unavailable to testify at trial.

The district court found that Custom Conveyor failed to prove the materiality and importance of Brown and Israel's testimony, but the court did not provide either factual support or an explanation for its conclusion. Our review of the record indicates that Custom Conveyor's offer of proof indicated that Brown would testify to the acceptance of materials and work performed for the project, and that Israel would testify to "product non-conformance." Consequently, Custom Conveyor established that their testimony was material and important to Custom Conveyor's defense that the product was defective. Brown and Israel were knowledgeable as to the condition of the welds, and their testimony was relevant to Custom Conveyor's claim for breach of contract.

Although the district court concluded that TC/American would be prejudiced, the court provided no factual support for this conclusion, and the court did not explain the nature and extent of the prejudice. We agree that attending two out-of-state depositions two weeks before trial might be prejudicial in certain circumstances. But TC/American received notice of the deposition request in March 2011, and therefore had two months to prepare for the Las Vegas depositions. Moreover, the record is devoid of any support for the claim that the depositions would have hindered TC/American's ability to prepare for trial.

We conclude that the district court abused its discretion by granting TC/American's motion for a protective order because it applied the wrong legal standard and its factual findings were not supported by the record. When the correct legal standard is applied to this case, we conclude that TC/American did not demonstrate good cause to preclude Custom Conveyor's depositions of the out-of-state witnesses.

### III.

Because the district court abused its discretion by granting TC/American's motion for a protective order, we must determine whether Custom Conveyer is entitled to a new trial. To be entitled to a new trial based on an improper evidentiary ruling, Custom Conveyer must establish prejudice. *See Johnson v. Washington Cnty.,*

518 N.W.2d 594, 600 (Minn.1994) (stating that "the primary consideration in determining whether to grant a new trial is prejudice" (citation omitted) (internal quotation marks omitted)). "An evidentiary error is prejudicial if it might reasonably have influenced the jury and changed the result of the trial." *George v. Estate of Baker*, 724 N.W.2d 1, 9 (Minn.2006). Here, the district court's rulings deprived Custom Conveyer of the opportunity to present testimony of two material and important non-party witnesses concerning one of the key issues in the case: whether TC/American's product conformed to the requirements of the contract or were defective. And the proposed testimony of these witnesses is not cumulative of other testimony that Custom Conveyer presented at trial.[6] Consequently, the jury's verdict might have been influenced by the excluded testimony, and therefore Custom Conveyor has established prejudice. Accordingly, we reverse the decision of the court of appeals and remand for a new trial.

Reversed and remanded.

LILLEHAUG, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

STRAS, Justice (concurring and dissenting).

Because the court substitutes itself for the rulemaking process and the district court, I respectfully dissent from the court's decision to grant a new trial to Custom Conveyor.

As the court implicitly recognizes, Minnesota practitioners have long distinguished between depositions intended to discover information for trial and those intended to preserve trial testimony. 1A David F. Herr & Roger S. Haydock, *Minnesota Practice—Civil Rules Ann.* § 30:7 (5th ed. 2010) ("Depositions are usually taken to discover information, known as discovery depositions, or to preserve evidence, known as depositions taken to preserve testimony."). In light of that distinction, I agree with the court's conclusion that a deadline in a scheduling order for "complet[ing] discovery" does not necessarily apply to taking a deposition for the *sole* purpose of preserving the testimony of material, out-of-state witnesses who are unavailable for trial. That conclusion should have been the end of the court's analysis.

Yet the court goes further. The court first defines the scope of its holding as limited to depositions taken solely for preserving the trial testimony of unavailable, out-of-state witnesses.[1] It then invents a

---

**6.** The concurrence and dissent argues the case should be remanded to the district court to determine whether TC/American established good cause that the depositions of the two out-of-state witnesses not be taken. We disagree. The undisputed evidence establishes that the witnesses Custom Conveyer sought to depose were necessary to establish its case, and that it was prejudiced by not being allowed to depose them. And TC/American presented no evidence that it would be prejudiced by having these depositions taken. *See George*, 724 N.W.2d at 10–11 (reversing and remanding for a new trial where the district court's erroneous jury instruction possibly prejudiced the defendant); *W.G.O. ex rel.*

*A.W.O. v. Crandall*, 640 N.W.2d 344, 350 (Minn.2002) (reversing a judgment against the defendant and remanding for a new trial where the district court erroneously admitted expert testimony that prejudiced the defendant).

**1.** Even in limiting the scope of its holding, the court's analysis is flawed. First, it is not clear that, outside of the unique facts of this case, it is easy to distinguish between a deposition taken solely for preserving trial testimony and one taken solely for discovering information. *See Integra Lifesciences I, Ltd. v. Merck KGaA*, 190 F.R.D. 556, 559 (S.D.Cal. 1999) ("Defendants fail to address how the

multi-factor inquiry for district courts to use in determining whether "good cause" exists for the grant of a protective order. By reversing for a new trial through its application of an impromptu, judicially crafted rule rather than adhering to existing rules, the court undermines the rulemaking process. Rulemaking is a job for the rulemaking process.

The court then compounds its error when it applies its new multi-factor inquiry to the issue presented in this case, even though, as the court recognizes, the district court did not have the benefit of our new rule when it rendered its decision.[2] Such an approach makes sense when there is only one reasonable conclusion that a district court can reach under the new rule, when we are affirming the decision of the district court in light of the new rule, or when the decision itself is subject to de novo review by this court. In other circumstances, the appropriate disposition is to vacate the decision of the district court and remand to the district court for further proceedings. *See Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 799 (Minn.2013) (remanding to the district court "to reevaluate the evidence using the correct legal standard"); *Green v. BMW of N. Am., LLC*, 826 N.W.2d 530, 539 (Minn. 2013) (reversing and remanding for further proceedings after holding that district court abused its discretion by applying the wrong legal standard in awarding attorney fees).

In this case, our review of the district court's decision to grant TC/American Monorail's motion for a protective order is for an abuse of discretion. Yet rather than remanding the case to the district court to exercise its discretion, the court usurps the role of the district court by granting a new trial under its new test, even though there is a reasonable argument that Custom Conveyor failed to seek the depositions of the two out-of-state witnesses in a timely manner. Under these circumstances, I would adhere to precedent and remand to the district court.[3]

court or parties should distinguish between 'trial' depositions which must be completed within the discovery time period and those which have no time limits."). Most depositions serve multiple purposes, and a rule turning on the subjective intent of the attorney taking the deposition is susceptible to manipulation and doubt. Second, the court fails to explain why it limits its proposed rule to only unavailable, out-of-state witnesses. If an attorney is entitled to take a deposition to preserve trial testimony absent a protective order, as the court concludes, then the boundaries of Minnesota should not serve as an artificial barrier to availing oneself of that right.

2. The court identifies four factors that are relevant to the decision of whether to grant a protective order, but also directs district courts to consider "all of the relevant evidence." Because the good-cause inquiry potentially includes factors beyond those specifically identified by the court and may require the presentation of additional evidence, the appropriate disposition in this case is to remand to the district court so that it can conduct the good-cause inquiry in the first instance.

3. The district court's error in this case was its decision to apply a *discovery* deadline to a deposition taken solely for the preservation of trial testimony. However, nothing in today's decision prevents a district court from specifying a deadline in a scheduling order for the completion of trial depositions. After all, a deadline for completing trial depositions is plainly the type of "other matter[ ]" that a scheduling order may address under Rule 16.02(g).