*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0534**

Mark Michael Dwyer, petitioner,
Respondent,

vs.

Tamara Jo Molde,
Appellant.

**Filed December 7, 2015
Affirmed as modified
Hooten, Judge**

Dakota County District Court
File No. 19-C5-06-008380

Mark Michael Dwyer, Minneapolis, Minnesota (pro se respondent)

Samuel J. Edmunds, Sieben Edmunds PLLC, Mendota Heights, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Cleary, Chief Judge; and Halbrooks, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

Appellant seeks review of the district court's grant to respondent, by default, of a 50-year harassment restraining order (HRO) against appellant. Appellant argues that the district court (1) lacked a factual basis for granting the HRO, (2) failed to make findings sufficient to support a 50-year HRO, and (3) should not have granted an HRO longer in

duration than respondent requested. Because the district court's factual findings are sufficient to support the issuance of an HRO, we affirm the grant of the HRO. But because the district court granted a 50-year HRO by default when the respondent initially sought a three-year HRO, we modify the duration of the HRO to reflect the relief requested by respondent.

## FACTS

Appellant Tamara Molde and respondent Mark Dwyer have one minor child, and a history of more than decade's worth of litigation regarding their child. As is relevant here, Molde accused Dwyer of abusing their child before the child was three years old. By order filed August 2, 2005, the district court found that Molde's accusations of abuse were unsubstantiated and endangered the child. The order awarded Dwyer temporary sole legal and physical custody of the child, and required Molde to "refrain from making any further allegations or suggestions of child abuse against [Dwyer] to anyone, including the minor child." In 2006, Dwyer petitioned the district court for an HRO against Molde under Minn. Stat. § 609.748 (2004). In that case, the district court found that Molde had violated the August 2005 order by continuing to allege that Dwyer had abused the child. The district court granted Dwyer a two-year HRO that restrained Molde from entering Dwyer's neighborhood and restricted Molde's contact with the child, and the child's school, friends, and neighbors.

In 2008, Dwyer successfully petitioned the district court to extend the existing HRO. In 2009, Dwyer alleged multiple HRO violations by Molde and again asked the district court to extend and modify the HRO. The district court granted Dwyer's request,

extending the HRO to January 2015. Later, the district court amended the HRO to modify the contact restrictions between Molde and Dwyer, and between Molde and the child. The memorandum attached to the district court's order noted that, since 2005, Molde had "nine separate[] criminally charged violations" of prior HROs, and that this course of conduct on her part harmed the child.

In January 2015, Dwyer moved the district court to extend the existing HRO to 2018, and to modify the provisions governing contact between Molde and the child. To support this request, Dwyer submitted an affidavit, a letter from the child's psychologist, and two e-mail exchanges between the parties. At the hearing on his motion, Dwyer was pro se. Molde was initially represented by counsel but she discharged her attorney at the beginning of the hearing, and requested a continuance. Even though the district court denied Molde's request for a continuance, she stated that she would leave the hearing. The district court then explained that if Molde left, Dwyer's request would be granted by default.

Molde departed and the hearing continued. Dwyer produced several documents not included with his motion papers and made factual assertions beyond those included in his affidavit. Also, the district court asked: "Was there a request to have the order remain in effect for 50 years? I think when there is a violation that is something that we can do . . . . But does that remain your request?" Dwyer responded, saying, "I'm fine with . . . that kind of extended, multiple year arrangement. . . . I'd like that indefinite protection, yeah." The district court then modified the HRO's contact provisions, reaffirmed other

3

terms and conditions of previous orders, and granted an HRO for 50 years—until January 30, 2065. Molde appeals.

## D E C I S I O N

### I.

Molde argues that the record generated in district court contained no evidence because, at the hearing, the district court did not take sworn testimony and failed to properly admit documents into evidence. Thus, Molde concludes, the district court should not have granted an HRO because the record lacks an evidentiary basis for an HRO.

Appellate courts review a district court's decision regarding whether to grant an HRO for an abuse of discretion. *Witchell v. Witchell*, 606 N.W.2d 730, 731 (Minn. App. 2000). We will not set aside a district court's factual findings unless they are clearly erroneous, and we give due regard to the district court's evaluation of credibility. *Kush v. Mathison*, 683 N.W.2d 841, 843–44 (Minn. App. 2004), *review denied* (Minn. Sept. 29, 2004). To grant an HRO, the district court must find, as the result of a hearing, "that there are reasonable grounds to believe that the [actor] has engaged in harassment." Minn. Stat. § 609.748, subd. 5(b)(3) (2014). Harassment includes "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another, regardless of the relationship between the actor and the intended target." *Id.*, subd. 1(a)(1) (2014). A district court may grant an HRO for a period of up to 50 years "[i]f the court finds that the petitioner has had two or more previous restraining orders in effect

4

against the same [actor] or the [actor] has violated a prior or existing restraining order on two or more occasions." Minn. Stat. § 609.748, subd. 5(b) (2014). Absent these findings, the HRO must be for a fixed period of not more than two years. *Id.*

The district court stated that its order was based on "the [a]ffidavit and [m]otion and evidence presented at the [m]otion hearing." Because Dwyer's affidavit and motion were submitted under oath, the district court was entitled to consider the facts alleged therein when addressing whether reasonable grounds existed to believe that Molde had engaged in harassment. On appeal, appellate courts view evidence presented by affidavit in the light most favorable to the prevailing party. *Straus v. Straus*, 254 Minn. 234, 235, 94 N.W.2d 679, 680 (1959). Dwyer's affidavit and motion allege that Molde violated the existing HRO by impermissibly making contact with the child. The letter from the child's psychologist included as an exhibit to Dwyer's motion states that Molde tried to contact the child by e-mail, and went to the house of the child's grandmother when Molde knew the child was present, each of which are also violations of the HRO. The psychologist also expressed concern about the tenor of Molde's e-mail communication to the child, recommending that her communication with the child be strictly limited to in-person visits within certain parameters.

Dwyer's affidavit and motion also included e-mail messages between Molde and Dwyer, in which Molde is hostile to Dwyer. The HRO in effect at the time of these exchanges prohibited Molde from contacting Dwyer, with one exception: she could use e-mail or U.S. mail to communicate with Dwyer to schedule visits with the child. In one e-mail exchange, Molde and Dwyer discussed a visit between Molde and the child, but

5

the exchange also included Molde's referring to Dwyer with an expletive, and her stating that she would start attending all of the child's functions. During the motion hearing, the district court expressed concern about these e-mails:

> [T]he Court is troubled by the continuing—the threatening nature of Ms. Molde's e-mails to you . . . .
>
> . . . .
>
> I think what was most troubling to the Court in reviewing her e-mails is her threats to invade your neighborhood and your life and the schools, and we had so many problems with that years ago.

The allegations in Dwyer's motion, affidavit and supporting papers are sufficient to provide "reasonable grounds to believe that [Molde] has engaged in harassment" under Minn. Stat. § 609.748, subds. 1(a)(1), 5(b)(3) (2014). Therefore, the district court's determinations on this point are supported by the record.

Molde argues that the record before the district court contained no evidence because the district court did not swear in witnesses and did not properly admit evidence during the hearing. But even if Molde is correct and no testimonial evidence and no documentary evidence was properly received at the hearing, Dwyer's affidavit, motion, and supporting papers describe multiple actions by Molde that would constitute harassment under the statute. Thus, even if no evidence was properly received at the hearing, there is still sufficient evidence in the record to support the grant of an HRO.

**II.**

Molde argues that because the district court made no findings of fact, it had no basis to grant a 50-year HRO. Where appropriate, an appellate court can infer findings that are not explicit. *See Pechovnik v. Pechovnik*, 765 N.W.2d 94, 99 (Minn. App. 2009)

6

(inferring, in the context of an appeal in a domestic abuse proceeding, an implicit finding regarding witness credibility). Here, as noted, the district court based its order on Dwyer's affidavit and motion, and on the hearing. Because the affidavit and motion contained evidence that Molde violated an existing HRO at least twice—by making prohibited contact with the child twice, and by engaging in prohibited communication with Dwyer—those documents support a determination that Molde violated an existing HRO on multiple occasions. Thus, these aspects of the record satisfy the requirements of section 609.748, subd. 5(b), and the district court, therefore, did not abuse its discretion in finding this evidence sufficient to support an HRO with a duration exceeding two years.

Further, this court may also infer that the district court took notice of the history of the parties' conflict, even though it was not part of the record at the hearing. Minn. R. Evid. 201 (addressing judicial notice); *Matter of Zemple*, 489 N.W.2d 818, 820 (Minn. App. 1992) (holding that the district court did not abuse its discretion in taking judicial notice of findings made in previously adjudicated proceedings). The district court judge who granted the current HRO also presided over most of the parties' prior decade's worth of litigation. In denying Molde's request to continue the January 2015 hearing, the judge noted, "[M]y goodness, we'll grow old together on this case. I think we first had it—was it 2003[?], and we've gone round and round and round." This judge was well acquainted with the entire district court record when she based her most recent decision on factual allegations in Dwyer's affidavit and motion: The district court could have based its decision on Molde's multiple violations of prior HROs, which would satisfy the requirements of section 609.748, subd. 5(b). Alternatively, though it did not make an

7

explicit finding to this effect, the district court could have considered the entire file and found that Dwyer had two or more prior HROs in effect against Molde. Either determination would meet the statutory requirement for granting an HRO with a duration exceeding two years.

When addressing whether to remand for missing findings of fact, appellate courts may consider the file, the record, and the findings the district court did make, and decline to remand if the appellate court concludes that any remand would be purely one of form in which the district court would only make the missing findings without altering its resolution of the case. *See Grein v. Grein*, 364 N.W.2d 383, 387 (Minn. 1985) (refusing to remand a custody dispute for missing findings of fact when doing so would not alter the result). This record makes it abundantly clear that the district court was fully aware that the parties have been litigating these and related matters for more than a decade, and that there are at least two independently sufficient bases in the record for an HRO with a duration exceeding two years. On this record, we conclude that if we were to remand this case, the district court would simply make the missing findings and that there is no prospect the district court will alter its decision to grant an HRO. Therefore, we decline to remand this case based on a lack of findings.

**III.**

Regarding the HRO hearing, Molde argues that the district court is obliged to make its findings based on sworn testimony and properly admitted documents, and that this obligation should have precluded the district court from proceeding by default. Molde is incorrect. In certain circumstances, the statute does not require a hearing. *See*

8

Minn. Stat. § 609.748, subd. 3 (stating that "[n]othing in this section shall be construed as requiring a hearing on a matter that has no merit").  Further, this record contains sworn statements and documentary evidence in the form of Dwyer's affidavit, motion, and supporting papers, and we have already ruled that they are sufficient to support the grant of an HRO.  And Molde cites no authority for the idea that a party's voluntary absence from a properly-noticed HRO hearing should not result in default.  Indeed, the district court was not required to continue the HRO hearing after Molde discharged her attorney at the beginning of that hearing.  *See Dunshee v. Douglas*, 255 N.W.2d 42, 45 (Minn. 1977) (reviewing district court's refusal to grant a continuance for clear abuse of discretion).  Further, here, the district court noted Dwyer's objection to Molde's request for a continuance, commented on the decade-long duration of the parties' HRO-related disputes, stated that the hearing would, in fact, proceed, and told Molde that her choice to leave the hearing would result in default.  Molde still opted to leave the proceeding.  As a result, Molde functionally admitted all of Dwyer's properly pleaded allegations.  *State by Humphrey v. Ri-Mel, Inc.*, 417 N.W.2d 102, 110 (Minn. App. 1987), *review denied* (Minn. Feb. 17, 1988).  On this record, Molde has not shown any error or abuse of discretion by the district court in proceeding at the HRO hearing by default.

**IV.**

Molde argues that the district court erred in granting relief exceeding that requested by Dwyer in his papers.  Under the HRO statute, if the district court makes the required findings, the "relief granted by the restraining order *may* be for a period of up to 50 years."  Minn. Stat. § 609.748, subd. 5 (2014) (emphasis added); *see* Minn. Stat.

9

§ 645.44, subd. 15 (2014) (stating that "'[m]ay' is permissive"). Generally, however, default proceedings are subject to the Minnesota Rules of Civil Procedure. Minn. R. Civ. P. 54.03. "The interpretation of the rules of civil procedure . . . is a question of law that [appellate courts] review de novo." *TC/Am. Monorail, Inc. v. Custom Conveyor Corp.*, 840 N.W.2d 414, 417–18 (Minn. 2013).

Under the rules, if a district court grants a default judgment, the relief "shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." Minn. R. Civ. P. 54.03. In a typical civil matter, even if the evidence would support greater relief, generally relief is "limited in kind and degree to what is specifically demanded in the complaint." *Thorp Loan & Thrift Co. v. Morse*, 451 N.W.2d 361, 363 (Minn. App. 1990), *review denied* (Minn. Apr. 13, 1990). This is because "[t]he defendant by his default submits, without contest on his part, to the court, only the claim of the plaintiff for the relief prayed in the complaint. But if a different or greater relief were demanded, he might appear and contest it as unjust . . . ." *Id.* at 364 (quotation omitted).

An HRO proceeding is not a typical civil matter, but a special proceeding. *Fiduciary Found., LLC v. Brown*, 834 N.W.2d 756, 761 (Minn. App. 2013), *review denied* (Minn. Sept. 17, 2013). Despite this fact, we assume, for purposes of this appeal, that the general rules regarding default proceedings apply. Molde chose to leave the courtroom after being advised that her decision would result in Dwyer's request being granted by default. Dwyer's papers requested a three-year extension of the then existing HRO, which was scheduled to end in January 2015. Discussion of a possible 50-year

10

HRO occurred at the hearing after Molde's departure, and she had no notice that a 50-year HRO was a possible result in this case.  Therefore, we conclude that the district court should not have granted Dwyer an HRO of a duration exceeding what he initially requested.  We therefore modify the HRO to reflect the three-year period that Dwyer did, in fact, request.  *See Thorp Loan & Thrift Co.*, 451 N.W.2d at 363–64 (stating that where the district court granted relief in a default judgment in excess of what was demanded, appellant was entitled to have error corrected on appeal).  The HRO will remain in effect until February 1, 2018, instead of January 30, 2065.[1]

**Affirmed as modified.**

---

[1]Our modification of the amended HRO is based solely upon the district court's sua sponte grant of a 50-year HRO in a default hearing.  In modifying the HRO to limit it to the three years' duration Dwyer requested, we are not addressing whether the circumstances of this case justify the 50-year HRO awarded by the district court, nor are we precluding the grant of a 50-year HRO, if shown to be appropriate.